UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

THOMAS D. RAFFAELE,

                       Plaintiff,

     - against -

THE CITY OF NEW YORK; NEW YORK CITY CIVILIAN
COMPLAINT REVIEW BOARD; RAYMOND W. KELLY, in
his official capacity as Police Commissioner for the City of New
York; RICHARD A. BROWN, in his official capacity as
QUEENS DISTRICT ATTORNEY, DANIEL O'LEARY,
individually and in his official capacity as an Assistant District
Attorney for Queens County, PETER A. CRUSCO, individually
and in his official capacity as an Assistant District Attorney of
Queens County, JON-KRISTIAN RZONCA, individually and
in his official capacity as a New York City Police Officer;
RICHARD LEE, individually and in his official capacity as a
New York City Police Officer; and "JANE and JOHN DOE #1-
20", individually and in their official capacity as New York City
Police Officers,

                      Defendant(s).

-------------------------------------------------------------------------X

No.

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

     Plaintiff, THOMAS D. RAFFAELE ("Judge Raffaele" and/or the "Plaintiff") by and

through his attorneys, the Law Offices of CARDENAS, ISLAM & ASSOCIATES, P.L.L.C., as

and for his Verified Complaint, against Defendants the CITY OF NEW YORK (the "City"); the

NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD (the "NYCCRB");

RAYMOND W. KELLY ("Commissioner Kelly"), in his official capacity as the Police

Commissioner for the City of New York; RICHARD A. BROWN, in his official capacity as the

Queens District Attorney, DANIEL O'LEARY ("ADA O'Leary"), individually and in his official

capacity as an Assistant District Attorney for Queens County, PETER A. CRUSCO ("ADA

Crusco"), individually and in his official capacity as an Assistant District Attorney for Queens

County, JON-KRISTIAN RZONCA ("Sergeant Rzonca"), individually and in his official capacity

as a Sergeant in the New York City Police Department (the "NYPD"); RICHARD LEE ("Officer

Lee"), individually and in his official capacity as an NYPD Police Officer; and "JOHN DOE#1-20" individually and in their official capacity as NYPD Police Officers, names currently unknown, (all aforementioned parties will collectively be referred to as the Defendants), and demands a jury trial.

Plaintiff, Judge Raffaele alleges as follows *all upon information and belief*:

## INTRODUCTION

1. This action arises, from among other things, an unprovoked and vicious attack on the Plaintiff, Hon. Justice Thomas D. Raffaele, a Supreme Court Justice for the State of New York, County of Queens, at the hands of the Defendant, JOHN DOE #1, an on-duty NYPD Police Officer whose name is still unknown (hereinafter referred to as the "Unknown Officer") and the subsequent conspiracy by the Defendants, including but not limited to Sergeant Rzonca, Officer Lee, John Doe#2, the Unknown Officer's "Partner" (hereinafter referred to as the "Unknown Partner"), and all other defendants, JOHN/JANE DOE'S that are NYPD Police Officers, names unknown at this time, to hide and/or cover up the Unknown Officer's wrongful actions, including but not limited to, his attack on Judge Raffaele.

Defendants' actions denied Judge Raffaele his basic civil rights and allowed culpable individuals to escape accountability, in part by submitting false statements and otherwise grossly failing to supervise the defendant NYPD Police Officers for actions that were unconstitutional, tortious and unnecessarily violent.

2

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988; the First and Fourteenth Amendments to the United State Constitution and the laws of the State of New York.

3. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343(1-4) and 2202. Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Hon. Justice Thomas D. Raffaele is a U.S. citizen with his primary residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Judge Raffaele is a Justice of the Supreme Court of the State of New York, County of Queens.

6. Defendant, the City of New York, is a municipal corporation duly incorporated and existing under the laws of the State of New York. The City established and maintains the NYPD as a constituent department of the City. At all relevant times herein, the City, acting through the NYPD, is responsible for the policies, practices, supervision and conduct of all NYPD personnel. Moreover, the City is responsible for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

7. Defendant, the New York City Civilian Complaint Review Board, is a New York City agency within the State of New York that is responsible for handling complaints regarding force and/or alleged police misconduct.

3

8. Defendant, Raymond W. Kelly is the Police Commissioner for the City of New York, with supervisory authority over all officers and/or operations of the NYPD. He is sued here in his official capacity.

9. Defendant, Richard A. Brown is the District Attorney for the State of New York, County of Queens, with supervisory authority over all employees, investigations and/or operations of the Queens District Attorney's Office. He is sued here in his official capacity.

10. Defendant, Daniel O'Leary is an Assistant District Attorney for the State of New York, County of Queens. He is sued here in his individual and official capacity.

11. Defendant, Peter A. Crusco, is an Assistant District Attorney for the State of New York, County of Queens. He is sued here in his individual and official capacity.

12. Defendant Jon-Kristen Rzonca, at all times here in, is a Sergeant with the NYPD and employed by the City. He is sued here in his individual and official capacity.

13. Defendant, Richard Lee, at all times herein, is an NYPD Police Officer and employed by the City. He is sued here in his individual and official capacity.

14. Defendants Jane and John Doe# 1-20, names unknown at all relevant times herein, are NYPD Police Officers employed by the City. They are sued here in their individual and official capacity.

## NOTICE OF CLAIM PREREQUISITE

15. On or about August 29, 2012, Judge Raffaele, in furtherance of his causes of action, filed a timely Notice of Claim against the City in compliance with General Municipal Law §50 (a copy of the August 29, 2012, Notice of Claim is attached hereto as **Exhibit "A"**).

16. More than Thirty (30) days have elapsed since service of said notice and the City has failed to pay and/or adjust the claim.

4

17. The City dispensed the need to hold a 50-h examination by failing to schedule and/or question Judge Raffaele in advance of commencing this lawsuit.

18. This action has been commenced within one year and ninety days after the happening of the events that took place on or about June 1, 2012, from which these claims arise.

## FACTUAL AND GENERAL ALLEGATIONS

19. Upon information and belief, on or around 12:00AM on June 1, 2012, plaintiff Judge Raffaele and his associate Muhammad Rashid ("Mr. Rashid") completed delivering items donated to Mr. Rashid's tutoring center, Smart Academia located at 72-24 Broadway, 4th Floor, Jackson Heights, New York 11372.

20. Upon information and belief, on or about 12:00AM on Friday, June 1, 2012, Judge Raffaele and Mr. Rashid exited Smart Academia and traveled east on 37th Road toward 74th Street to return car keys Mr. Rashid previously borrowed.

21. Upon information and belief, while traveling east on 37th Road, Mr. Rashid and Judge Raffaele noticed a blue and white NYPD vehicle Id. No. 3391 parked at the intersection of Broadway and 73rd Street outside Diversity Plaza.

22. Upon information and belief, on or about 12:00AM on Friday, June 1, 2012, Judge Raffaele and Mr. Rashid arrived at the Intersection of 37th Road and 74th Street in Jackson Heights, New York.

23. Upon information and belief, as Judge Raffaele and Mr. Rashid approached the Intersection and turned the corner looking northbound on 74th Street, they noticed an anxious and agitated crowd gathering and observing two NYPD Officers, defendants the Unknown Officer and his Unknown Partner.

5

24. Upon information and belief, Judge Raffaele directly observed Charles Menninger ("Mr. Menninger"), a homeless man commonly known in the neighborhood, being restrained by the Unknown Officer.

25. Upon information and belief, the Unknown Partner was standing on 74th Street and kicking a metal pipe toward Mr. Menninger.

26. Upon information and belief, Judge Raffaele observed that Mr. Menninger was shirtless, face down in middle of 74th Street, his head pointing eastbound toward the middle of 74th Street. Mr. Menninger's hands were handcuffed behind his back.

27. Judge Raffaele directly observed the Unknown Officer kneeling with force on Mr. Menninger's left side. The Unknown Officer was repeatedly standing up and driving his right knee into the back of Mr. Menninger with brutal force.

28. Mr. Menninger was not attempting to stand up, resist or otherwise flee from the Unknown Officer's repeated attack.

29. Judge Raffaele heard Mr. Menninger pleading with the Unknown Officer "I beg you please stop, I beg you please stop" while the Unknown Officer continued driving his knee into Mr. Menninger's back.

30. The Unknown Officer continued his assault on Mr. Menninger despite cries and pleas to stop from Mr. Menninger and members of the growing crowd.

31. Judge Raffaele directly observed the Unknown Officer continue to attack Mr. Menninger and noticed that the Unknown Officer's actions were creating a growing crowd around the two NYPD Police Officers.

32. Judge Raffaele observed the crowd plead with the NYPD Police Officers to stop their use of excessive force on Mr. Menninger because he was clearly not resisting and already subdued.

6

33. Specifically, Judge Raffaele heard one of the female observers call out to the Unknown Officer and his Unknown Partner and plead "I'm a nurse. You are injuring him. You have to stop."

34. Upon information and belief, multiple members of the crowd began using their cell phone cameras to catch the incident.

35. Judge Raffaele observed the crowd become increasingly larger and aggressive toward the Unknown Officer and the Unknown Partner because of their continuing acts of violence toward Mr. Menninger.

36. Judge Raffaele walked into the Intersection away from where the NYPD Police Officers were restraining Mr. Menninger and called the 911 Emergency Line.

37. Upon information and belief, on or around 12:08AM on Friday, June 1, 2012, Judge Raffaele spoke with a 911 Operator and requested that additional NYPD Police Officers quickly be sent to assist and/or protect the safety of the Unknown Officer and his Unknown Partner.

38. Upon information and belief, Judge Raffaele also advised the 911 operator that an ambulance should be sent as well.

39. Subsequently, upon information and belief, Judge Raffaele walked back to the sidewalk corner of 74th Street and 37th Road and attempted to placate members of the crowd by moving them away from Mr. Menninger and the Unknown Officer while asking them to calm down.

40. Shortly thereafter, additional NYPD Police Officers, including but not limited to defendants Sergeant Rzonca and Officer Lee, arrived at the scene.

41. Upon information and belief, the additional assisting NYPD Police Officers, setup a human safety perimeter around Mr. Menninger and the Unknown Officer in middle of 74th Street and began managing the large crowd.

7

42. Upon information and belief, numerous NYPD Police Officers aggressively approached the crowd and demanded individuals cease recording and/or taking pictures of the incident with their cell phone cameras.

43. Moreover, upon information and belief, Judge Raffaele was later informed by numerous witnesses who were also his neighbors that NYPD Police Officers made threatening comments toward members of the crowd to keep quiet and not come forward about what they had observed.

44. Additionally, upon information and belief, NYPD Police Officers threatened local bodega and shop owners not to come forward with any security footage recording the June 1, 2012 incident.

45. However, at no time herein did the NYPD Police Officers ever remove the Unknown Officer from the tension filled site of the incident.

46. Upon information and belief, Judge Raffaele observed and/or heard members of the crowd make verbal statements toward the Unknown Officers, expressing in sum and substance that he had been too rough and/or otherwise acted wrongfully.

47. Upon information and belief, Judge Raffaele observed the Unknown Officer verbally engage members of the crowd by yelling vulgar obscenities and stating that the crowd had no right to comment on his actions or him personally.

48. Upon information and belief, at all times herein, Judge Raffaele never observed any member of the crowd physically approach the Unknown Officer and/or any other Police Officer acting as part of the safety perimeter around Mr. Menninger.

49. Upon information and belief, **as supported by video evidence**, Judge Raffaele was standing on or about 10-15 feet away from the NYPD Police Officers' safety perimeter and/or the Unknown Officer.

50. Moreover, upon information and belief, **as supported by video evidence**, Judge Raffaele observed the Unknown Officer become enraged over the crowds' verbal barbs and violently charge toward random members of the crowd.

51. Upon information and belief, **as supported by video evidence**, Judge Raffaele observed the Unknown Officer violently shove and attack random members of the crowd without provocation.

52. Moreover, **as supported by video evidence**, the Unknown Officer charged up to Judge Raffaele, who was standing about 15 feet away from the NYPD Police Officers, and shoved him without provocation using his right arm.

53. **As supported by video evidence**, the Unknown Officer shoved Judge Raffaele without warning and/or any explanation why he needed to use physical force against Judge Raffaele.

54. **As supported by video evidence, the Unknown Officer struck Judge Raffaele in the neck using a "karate chop-like" move with his left hand immediately after pushing Judge Raffaele with his right hand.**

55. **As supported by video evidence, the Unknown Officer attacked Judge Raffaele with NO LESS THAN 4-5 NYPD POLICE OFFICERS OBSERVING THE ALTERCATION.**

56. Upon information and belief, Judge Raffaele did not make any derogatory statements and/or physical threatening gestures toward the Unknown Officer that would reasonably justify the Unknown Officer's use of physical force against him.

57. Moreover, Judge Raffaele did not retaliate and/or attempt to strike back at the Unknown Officer in any way.

58. Judge Raffaele was overcome with blinding pain as a result of the Unknown Officer's karate chop to the neck. His ability to speak and/or breathe properly was temporarily lost.

9

59. Upon information and belief, no NYPD Police Officer at the scene restrained the Unknown Officer from using physical force against members of the crowd, restrained the Unknown Officer from verbally threatening and engaging the crowd and/or came to Judge Raffaele's aid.

60. Upon information and belief, the Unknown Officer was moved away by other NYPD Police Officers immediately ONLY AFTER striking Judge Raffaele in the throat.

61. Upon information and belief, after Judge Raffaele regained a limited ability to speak, he immediately informed Officer Lee that he wanted to file an official report and/or complaint against the Unknown Officer.

62. Upon information and belief, Officer Lee informed Judge Raffaele that he "can't do that." Judge Raffaele immediately demanded to speak to the Commanding Officer.

63. Shortly thereafter, Sergeant Rzonca approached Judge Raffaele and identified himself.

64. Judge Raffaele identified himself as a New York State Supreme Court Judge to Sergeant Rzonca and informed him that he had been brutally attacked and struck in the neck by the Unknown Officer.

65. Upon information and belief, while talking to Sergeant Rzonca, Judge Raffaele displayed numerous signs of extreme pain and/or discomfort in the neck area where the Unknown Officer had struck him.

66. Judge Raffaele demanded that Sergeant Rzonca take his statement for a formal complaint against the Unknown Officer.

67. Sergeant Rzonca did not take Judge Raffaele's statement but promised to investigate and returned to the group consisting of NYPD Police Officers, which upon information and belief included the Unknown Officer.

10

68. Upon information and belief, a few minutes later, Sergeant Rzonca again approached Judge Raffaele and stated "I don't know who you are talking about."

69. Moreover, upon information and belief, Sergeant Rzonca did not offer Judge Raffaele any alternative recourse or avail himself to take Judge Raffaele's statement.

70. Judge Raffaele became frustrated and continued to experience excruciating pain in the neck area where the Unknown Officer had struck him.

71. Nonetheless, upon information and belief, Judge Raffaele was calm and unwilling to confront Sergeant Rzonca and/or any other the NYPD Police Officer.

72. Upon information and belief, after being turned away by Sergeant Rzonca, Judge Raffaele and Mr. Rashid continued walking north on 74th Street to complete their original task of returning a set of car keys.

73. However, upon information and belief, while walking northbound on 74th Street with Mr. Rashid to return the car keys, Judge Raffaele **observed the Unknown Officer and his Unknown Partner still on scene and took their picture using his cell phone camera**.

74. Upon information and belief, Sergeant Rzonca blatantly lied to Judge Raffaele when he told him that he did not know who Judge Raffaele was talking about although the Unknown Officer was still nearby on the scene.

75. Upon information and belief, Judge Raffaele and Mr. Rashid traveled westbound on 37th Road after dropping off the car keys.

76. Upon information and belief, Judge Raffaele continued to experience excruciating pain in the neck area and labored breathing as a direct result of the Unknown Officer's attack.

77. Upon information and belief, on or around 12:49AM while traveling westbound on 37th Road, Judge Raffaele and Mr. Rashid again observed the Unknown Officer and his Unknown Partner

enter the same NYPD vehicle Id. No. 3391 they had previously seen parked on 37th Road outside Diversity Plaza.

78. Thus, upon information and belief, NYPD Police Officers, including but not limited to Officer Lee and Sergeant Rzonca, as well as the many unknown NYPD Officers, actively hid the Unknown Officer's identity to deceive Judge Raffaele so that he could not complain of the Unknown Officer's attack.

79. Shortly thereafter, upon information and belief, Judge Raffaele traveled back to his residence, a mere two blocks north of where the incident occurred.

80. However, as discussed above, Judge Raffaele felt intense pain in the neck area, had difficulty breathing and suffered a limited range of speech volume as a direct result of the Unknown Officer's attack.

81. Moreover, upon information and belief, Judge Raffaele feared he suffered serious physical injury because the pain in his neck area, labored breathing and limited vocal volume did not disappear over time.

82. Upon information and belief, on or about 1:00AM on June 1, 2012, Judge Raffaele checked himself into the Emergency Room at the Elmhurst Hospital Center.

83. The Elmhurst Hospital Center is approximately 4 blocks southeast of where Judge Raffaele was attacked by the Unknown Officer.

84. While at the Elmhurst Hospital Center, Judge Raffaele was checked for internal injuries, including but not limited to a crushed larynx.

85. Moreover, upon information and belief, Judge Raffaele advised the medical staff that his injuries were the result of an attack.

12

86. Upon information and belief, the Elmhurst Hospital Center medical staff summoned two NYPD Police Officers, names unknown, from the 110th Precinct to take Judge Raffaele's statement.

87. Upon information and belief, the NYPD Police Officers belonging to the 110th Precinct met with Judge Raffaele and were initially interested and/or willing to take his complaint against the Unknown Officer.

88. However, upon information and belief, the NYPD Police Officers belonging to the 110th Precinct were called away out of Judge Raffaele's sight just a few moments after they had started talking to him.

89. Upon information and belief, Mr. Rashid, who had arrived at the Emergency Room shortly after Judge Raffaele to check on him, observed Officer Lee and Sergeant Rzonca separately speaking with the NYPD Police Officers from the 110th Precinct on two separate occasions in the Emergency Room. Mr. Rashid could not hear what was being said.

90. Subsequently, upon information and belief, after talking to Sergeant Rzonca and Officer Lee, the NYPD Police Officers belonging to the 110th Precinct returned to Judge Raffaele and informed him that the incident had occurred outside the 110th Precinct's geographical limitations.

91. As a result, upon information and belief, the NYPD Police Officers belonging to the 110th Precinct informed Judge Raffaele that they would not take his statement and advised him to file a complaint at his local precinct.

92. Upon information and belief, the NYPD Police Officers belonging to the 110th Precinct declined to take Judge Raffaele's statement almost immediately after they had been seen speaking with Officer Lee and Sergeant Rzonca.

13

93. Upon information and belief, Officer Lee and Sergeant Rzonca advised the NYPD Police Officers belonging to the 110th Precinct of the nature of Judge Raffaele complaint and directed them to not take his statement.

94. On or around 5:30 A.M. on June 1, 2012, Judge Raffaele was discharged from Elmhurst Hospital Center.

95. On or about the week of July 8, 2012, in the days immediately following the attack, Judge Raffaele filed a complaint with the NYCCRB, met with Queens County Assistant District Attorney, Daniel O'Leary and met with detectives with the NYPD's Internal Affairs Bureau ("Internal Affairs").

96. Judge Raffaele filed a complaint with the NYCCRB, the Queens District Attorney's Office and Internal Affairs (Complaint No. 12-29848).

97. Upon information and belief, Judge Raffaele provided ADA O'Leary, the NYCCRB and Internal Affairs the names and contact information Mr. Rashid and S.M. Ismail ("Mr. Ismail"), two eye witnesses who observed what happened on the night of June 1, 2012.

98. Upon information and belief, **as supported by video evidence,** Mr. Rashid was standing right next to Judge Raffaele when he was attached by the Unknown Officer.

99. Upon information and belief, **as supported by video evidence,** Mr. Ismail was standing approximately 4-6 feet away from Judge Raffaele when he was attached by the Unknown Officer. Mr. Ismail directly observed the Unknown Officer's actions from where he stood.

100.   Upon information and belief, prior to the July 25, 2012 meeting with Judge Raffaele as further discussed below, the Queens District Attorney's Office did not interview Mr. Rashid and/or Mr. Ismail regarding the June 1, 2012 incident although Judge Raffaele provided their contact information more than 7 weeks earlier.

14

101.    Upon information and belief, on or about July 25, 2012, Judge Raffaele met with Queens County Assistant District Attorney, Peter A. Crusco ("ADA Crusco") in his chambers.

102.    Upon information and belief, ADA Crusco informed Judge Raffaele that "there was not enough evidence to prosecute."

103.    Upon information and belief, ADA Crusco conceded to Judge Raffaele that the Queens District Attorney's Office did not interview, Mr. Rashid and/or Mr. Ismail even though Judge Raffaele personally vouched for their credibility and provided their contact information.

104.    Upon information and belief, ADA Crusco informed Judge Raffaele that multiple NYPD Police Officers' statements detailing the incident do no support Judge Raffaele's allegations against the Unknown Officer.

105.    **Specifically, upon information and belief, ADA Crusco informed Judge Raffaele that one statement described Judge Raffaele as acting aggressively and allegedly charging into the safety perimeter setup by NYPD Police Officers around Mr. Menninger.**

106.    **Upon information and belief, ADA Crusco stated that another NYPD Police Officer's written statement allegedly states that the Unknown Officer only touched Judge Raffaele once on the chest with the right hand.**

107.    **Upon information and belief, the NYPD Police Officer's written statement intentionally failed to mention that the Unknown Officer struck Judge Raffaele with a second, left-handed karate chop to the throat.**

108.    **Upon information and belief, the NYPD Police Officer's written statement expressed that Judge Raffaele's throat must have been hurting because he was yelling loudly during the June 1, 2012 incident.**

109.  **As supported by video evidence**, Judge Raffaele at no time approached and/or acted
      aggressively toward the Unknown Officer and/or any NYPD Police Officer.

110.  Also, **as supported by video evidence**, Judge Raffaele at no time attempted to go into the
      safety perimeter setup by NYPD Police Officers around Mr. Menninger.

111.  Moreover, **as supported by video evidence**, the Unknown Officer clearly struck Judge
      Raffaele **TWICE**, once pushing him with the right hand the second being the left handed karate
      chop to the neck.

112.  Upon information and belief, during the July 25, 2012 meeting with Judge Raffaele, ADA
      Crusco named the NYPD Police Officers' that provided the written statements but did not
      identify who the Unknown Officer was.

113.  Moreover, upon information and belief, ADA Crusco simply quoted excerpts from the
      multiple NYPD Police Officers' Official Reports and did not provide copies of the officers'
      reports to Judge Raffaele for his personal review.

114.  Upon information and belief, Judge Raffaele believes that the statements were submitted
      by the Unknown Partner, Officer Lee, Sergeant Rzonca and another unknown female Sergeant
      responding to the incident.

115.  Upon information and belief, during the July 25, 2012, meeting ADA Crusco conceded to
      Judge Raffaele that his determination not to prosecute the Unknown Officer was made without
      interviewing any of Judge Raffaele's non-police witnesses.

116.  Upon information and belief, Judge Raffaele alleges that Defendants did not interview
      ANY non-police witnesses regarding the June 1, 2012 incident despite the fact that on or
      around 100 people had gathered as part of the crowd.

16

117. Upon information and belief, Judge Raffaele inquired as to why Mr. Rashid and/or Mr. Ismail had not been interviewed almost seven weeks following the incident.

118. Upon information and belief, ADA Crusco off-handedly stated that Mr. Rashid had not answered requests sent by NYCCRB and/or Internal Affairs investigators.

119. Thus, upon information and belief, ADA Crusco stated he assumed that Mr. Rashid would equally fail to meet with NYPD Police Officers that work closely with the Queens District Attorney's Office.

120. Subsequently, upon information and belief, on or about early August 2012, shortly after ADA Crusco informed Judge Raffaele of his determination, NYPD Police Officers, who specifically work with the Queens District Attorney's Office, approached Mr. Rashid and Mr. Ismail for an interview regarding the June 1, 2012 incident.

121. Upon information and belief, ADA Crusco informed Judge Raffaele that no action would be brought against the Unknown Officer for lack of evidence **BEFORE** Mr. Rashid and/or Mr. Ismail were approached for an interview.

122. Upon information and belief, Mr. Rashid and Mr. Ismail were only interviewed so that the Queens District Attorney's Office could validate their preconceived decision not to prosecute the Unknown Officer.

123. Upon information and belief, Mr. Ismail informed Judge Raffaele that the NYPD Police Officers were very aggressive during the interview.

124. Simply said, Mr. Ismail felt as if the NYPD Police Officers were attempting to dissuade him from coming forward with his account of the June 1, 2012, events.

125. Moreover, Mr. Ismail felt that the NYPD Police Officers discredited Mr. Ismail's account of the June 1, 2012 incident.

17

126. Upon information and belief, Mr. Ismail's account, as given to the NYPD Police Officers, mirrors Judge Raffaele's account because Mr. Ismail was standing near Judge Raffaele when he was attacked by the Unknown Officer.

127. Upon information and belief, after receiving messages from the Queens District Attorney's Office, Mr. Rashid availed himself for an interview at their office.

128. Upon information and belief, while at the Queens District Attorney's Office, Mr. Rashid met with multiple investigators, names unknown at this time. The investigators identified themselves as members of Internal Affairs, NYCCRB and the Queens District Attorney's Office.

129. Upon information and belief, Mr. Rashid informed all investigating authorities that he personally viewed the Unknown Officers' wrongful actions toward Mr. Menninger as well as the Unknown Officer's brutal attack on Judge Raffaele.

130. Upon information and belief, Mr. Rashid's account of the June 1, 2012, events mirrors Judge Raffaele's account because Mr. Rashid was standing next to Judge Raffaele at the time he was attacked by the Unknown Officer.

131. Upon information and belief, the investigators and/or NYPD Police Officers working closely with the Queens District Attorney's Office completely discredited Mr. Rashid's account of the incident.

132. Upon information and belief, during the interview Mr. Rashid expressed to the Queens District Attorney's Office investigators that they were trying to manipulate his account of the incident to insulate the Unknown Officer and had "already decided" that no wrongdoing had happened.

133. **Mr. Rashid's and Mr. Ismail's view of the Unknown Officer's attack on Judge Raffaele is supported by video evidence.**

134. Upon information and belief, on or about August 22, 2012, Richard A. Brown issued a public statement on behalf of the Queens District Attorney's Office.

135. Richard A. Brown's statement expresses that "the alleged assault [on Judge Raffaele] occurred in a safety perimeter that police officers attempted to establish around the incident to contain Mr. Menninger and separate him from the growing crowd."

136. As previously mentioned, **video evidence supports that Judge Raffaele at no time attempted to enter into the safety perimeter.**

137. Moreover, **video evidence supports that the Unknown Officer charged and attacked multiple members of the "growing crowd", including but not limited to Judge Raffaele, on his own accord and far outside the NYPD Police Officers' safety perimeter around Mr. Menninger.**

138. Upon information and belief, on or about August 26, 2012, Judge Raffaele met with ADA Crusco, investigators from the NYCCRB and NYPD Police Officers belonging to Internal Affairs in his chambers.

139. Upon information and belief, during the August 26, 2012, meeting, ADA Crusco again informed Judge Raffaele that the Queens District Attorney's Office would not be bringing any charges related to the Unknown Officer's attack on Judge Raffaele.

140. Moreover, ADA Crusco stated in sum and substance that "nothing happened" and that Judge Raffaele had been acting aggressively, justifying the Unknown Officer's attack.

141. Upon information and belief, Judge Raffaele found it abnormal that ADA Crusco would openly discuss the Unknown Officer's brutality openly before Internal Affairs and/or NYCCRB investigators.

142. Moreover, upon information and belief, Judge Raffaele's reputation and his perceived ability to perform his duties as a Supreme Court Justice have been adversely affected by Defendants' actions, including but not limited to Richard A. Brown's public statement and ADA Crusco's numerous statements questioning Judge Raffaele's integrity, reliability, honesty and/or intent.

143. On or about September 12, 2012, Judge Raffaele discussed the Unknown Officer's attack and the Defendants' failure to prosecute the Unknown Officer with an FBI Agent (name unknown).

144. To date, upon information and belief, Judge Raffaele never heard back from Federal Investigators and is not aware of any ongoing Federal Investigation into the attack.

145. Moreover, on or around early June 2012, Commissioner Kelly became aware of the June 1, 2012 incident when questioned by the press during an event at Police Headquarters.

146. Upon information and belief, Commissioner Kelly failed to investigate the incident and/or take any remedial action after stating to the press that he would "check into it."

147. Moreover, upon information and belief, on or about July 7, 2012, the New York Times published a quote by Commissioner Kelly stating that "the investigation is going forward."

148. Upon information and belief, to date Commissioner Kelly never contacted Judge Raffaele to discuss the June 1, 2012 incident.

149.    Judge Raffaele is now forced to bring this action as a result of the Unknown Officer's attack, the Defendants' cover-up to wrongfully protect the Unknown Officer and Defendants' failure to seek any and/or all appropriate legal remedies against the Unknown Officer.

## CAUSES OF ACTION

## COUNT I

### 42 U.S.C. § 1983 CONSPIRACY

150.    Paragraphs 1-149 are incorporated by reference as though fully set forth.

151.    Upon information and belief, Defendants, under color of law, conspired with one another to deprive Judge Raffaele of his constitutional rights, including the right to i) be free from the intentional use of unreasonable force; ii) associate and speak freely; and iii) have access to and seek redress in the courts.

152.    Upon information and belief, Defendants engaged in the following in furtherance of the conspiracy to cover up Unknown Officer's acts of brutality:

  a.  Upon information and belief, defendants, the NYPD Police Officers, **names unknown but whose identities are recorded on video evidence,** fabricated and contrived allegations that Judge Raffaele i) acted aggressively toward NYPD Police Officers; ii) had not been struck and/or had only been struck once by the Unknown Officer; iii) forcefully entered into the NYPD Police Officers' safety perimeter setup around Mr. Menninger; and otherwise acted in a manner that justifies the Unknown Officer's attack.

  b.  Upon information and belief, all Defendants deliberately suppressed the truth, failed to accurately report the June 1, 2012, attack and investigate and/or prosecute the Unknown Officer.

21

c. Defendants were aware of the Unknown Officer's violent actions and have a duty to report it immediately;

d. Upon information and belief, all Defendants orchestrated a cover-up to insulate the Unknown Officer.

e. Upon information and belief, all Defendants refused to come forward with evidence and/or information that would incriminate the individuals involved, in violation of the individual Defendants' sworn duty as NYPD Police Officers, public servants and/or officials;

f. Upon information and belief, all Defendants discouraged individual witnesses from speaking truthfully and discredited individuals who did answer the investigators' questions;

g. Upon information and belief, defendants the NYPD Police Officers openly threatened and intimidated on-scene witnesses from recording and/or complaining about the June 1, 2012 attack.

h. Upon information and belief, the NYPD Police Officers submitted false police reports, statements and/or testimony to support and/or corroborate the fabricated allegations against Judge Raffaele and insulated the Unknown Officer from administrative and/or criminal sanctions; and

i. Upon information and belief, the NYPD Police Officers knowingly gave false statements to departmental investigators and/or Federal Investigators to insulate the Unknown Officer from administrative and/or criminal sanctions.

j. Upon information and belief, defendants Commission Kelly, Richard A. Brown and the Office of the Queens District Attorney as a whole conspired to deny Judge Raffaele his

constitutionally protected rights, by intentionally failing to interview any non-police witness prior and insulating the Unknown Officer from administrative/criminal sanctions.

153.    Defendants, violated and/or denied Judge Raffaele his constitutionally protected rights as a direct result of the Defendants' wrongful acts.

154.    Judge Raffaele now claims damages for injuries.

## COUNT II

### 42 U.S.C. § 1983 UNREASONABLE AND EXCESSIVE FORCE

155.    Paragraphs 1-154 are incorporated by reference as though fully set forth.

156.    Upon information and belief, defendant the Unknown Officer, by his conduct as described above, deprived Judge Raffaele of his constitutional right to be free from excessive and unreasonable force.

157.    Judge Raffaele now claims damages for the injuries.

## COUNT III

### 42 U.S.C. § 1983 FAILURE TO INTERCEDE

158.    Paragraphs 1-157 are incorporated by reference as though fully set forth.

159.    By their conduct and under color of state law, defendants the NYPD Police Officers including but not limited to defendants, Officer Lee, Sergeant Rzonca and the Unknown Partner, each had opportunities to intercede on behalf of Judge Raffaele to prevent the Unknown Officer's excessive use of force but due to their intentional conduct and/or deliberate indifference declined and/or refused to do so.

160.    Judge Raffaele now claims damages for the injuries.

## COUNT IV

### 42 U.S.C. § 1983 FIRST AND FOURTEENTH AMENDMENT VIOLATIONS

161.   Paragraphs 1-160 are incorporated by reference as though fully set forth.

162.   Upon information and belief, by their conduct and under the color of law all Defendants deprived Judge Raffaele of his First and Fourteenth Amendment rights to have access and to seek redress in the courts.

163.   Upon information and belief, all Defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against Judge Raffaele.

164.   Upon information and belief, Defendants' efforts to conceal the truth continue to the detriment of Judge Raffaele.

165.   As a direct and proximate result, Judge Raffaele suffered injuries and damages.

## COUNT V

### 42 U.S.C. § 1983(3) CONSPIRACY TO HINDER PROVISION OF EQUAL PROTECTION UNDER THE LAW

166.   Paragraphs 1-165 are incorporated by reference as though fully set forth.

167.   Upon information and belief, Defendants conspired with each other for the purpose of hindering and preventing the constituted authorities of the State of New York from securing and providing Judge Raffaele equal protection under the law.

168.   Upon information and belief, all Defendants, engaged in a cover up in furtherance of the conspiracy, and to conceal the crimes and/or misconduct of the Unknown Officer.

169.   Upon information and belief, among the actions taken in furtherance were the NYPD Police Officers false statements made to Federal and State Investigators, a clear betrayal of an NYPD Police Officer's legal duty to report incriminating acts to the proper authorities.

170.    As a direct and proximate result, Judge Raffaele suffered the injuries and damages.

## COUNT VI

### 42 U.S.C. § 1985(2) CONSPIRACY TO IMPEDE DUE COURSE OF JUSTICE

171.    Paragraphs 1-170 are incorporated by reference as though fully set forth.

172.    Upon information and belief, all Defendants conspired to impede the due course of justice

in New York State, with the intent of denying Judge Raffaele the equal protection of the laws.

173.    As a direct and proximate result of Defendants' conduct, Judge Raffaele suffered injuries

and damages.

## COUNT VII

### 42 U.S.C. § 1985(2) CONSPIRACY TO OBSTRUCT FEDERAL JUSTICE

174.    Paragraphs 1-173 are incorporated by reference as though fully set forth.

175.    Upon information and belief, Defendants encouraged all NYPD Police Officer witnesses

to refrain from giving true and/or accurate statements regarding the incident that occurred on

June 1, 2012 if approached by State and/or Federal Investigators.

176.    Upon information and belief, Defendants sought to deter and intimidate witnesses who

might give truthful testimony that would inculpate the Unknown Officer and helped NYPD

Police Officers modify their false statements when their efforts to discourage truthful witness

statements did not completely succeed.

177.    Upon information and belief, Defendants continue to deter and discourage NYPD Police

Officers from providing truthful statements to Federal Investigators about, among other things,

the June 1, 2012, brutal attacks on Mr. Menninger and Judge Raffaele.

178.    As a proximate and direct result of Defendants' conduct, Judge Raffaele suffered the
        injuries and damages.

## COUNT VIII

### 42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT

179.    Paragraphs 1-178 are incorporated by reference as though fully set forth.

180.    Upon information and belief, Defendants, Commissioner Kelly, Richard A. Brown and the
        Queens District Attorney's Office as a whole, had knowledge that a conspiracy was in
        progress, had the power to prevent or aid in preventing the conspiracy from continuing and
        neglected and/or refused to do so.

181.    Upon information and belief, Defendants could have promptly reported the brutality to
        authorized investigators. Their failure contributed to Judge Raffaele's suffering and continued
        denial of justice.

182.    Upon information and belief, if the Defendants had complied with the law and provided
        truthful information to while investigating the brutality the conspiracy would not have
        succeeded to the extent that it continues to.

183.    As a proximate and direct result of Defendants' conduct, Judge Raffaele suffered the
        injuries and damages.

## COUNT IX

### 42 U.S.C. § 1983 SUPERVISORY LIABILITY

184.    Paragraphs 1-183 are incorporated by reference as though fully set forth.

185.    Upon information and belief, defendants Commissioner Kelly and Sergeant Rzonca were,
        at all relevant times herein, supervisory personnel in the NYPD, with oversight responsibility

for the Unknown Officer, the Unknown Partner and Officer Lee. They are responsible for the training, instruction, supervision and/or discipline for the Unknown Officer who brutalized Judge Raffaele.

186.    Upon information and belief, Defendants received complaints about the conduct of the Unknown Officer and other officers in the 115th Precinct.

187.    Upon information and belief, Defendants knew about past complaints, aberrant behavior and/or disciplinary infractions, or in the exercise of due diligence, would have perceived that the Unknown Officer had conduct and/or disciplinary problems that posed an unreasonable risk of harm to the general public, including but not limited to, Judge Raffaele.

188.    The Defendants knew or should have known that the Unknown Officer's conduct was likely to occur.

189.    Upon information and belief, Defendants failed to take any preventative and/or remedial measures to guard against the brutality and cover up. If the Defendants had taken appropriate action, Judge Raffaele would not have been injured.

190.    Moreover, upon information and belief, the Defendants failed to take any corrective and/or disciplinary action against the Unknown Officer.

191.    Defendants' failure to supervise and/or discipline the Unknown Officer amounts to gross negligence, deliberate indifference and/or intentional misconduct which directly caused the injuries and damages suffered by Judge Raffaele described above.

## COUNT X

### 42 U.S.C. § 1983 SYSTEMIC CLAIM AGAINST CITY

192. Paragraphs 1-191 are incorporated by reference as though fully set forth.

193. Upon information and belief, it is the Defendants' policy and/or custom to inadequately investigate civilian complaints describing NYPD misconduct and to inadequately punish NYPD Police Officers when the civilian complaints are substantiated.

194. Upon information and belief, the Defendants tolerated and/or allowed acts of brutality to occur unchecked.

195. Moreover, upon information and belief, disciplinary departments and/or agents such as Internal Affairs and NYCCRB have substantially failed in their duties to investigate misconduct and discipline transgressors.

196. Upon information and belief, Internal Affairs investigations of brutality rarely lead to administrative trials and, in the rare instance that charges are sustained, the offending NYPD Police Officers face minimal punishment.

197. Upon information and belief, as a result even the most horrify and brazen acts of brutality are resolved with a slap on the wrist.

198. Moreover, upon information and belief, Defendants often take unreasonable amounts of time to interview the officers suspected of or believed to have witnessed excessive force and/or other criminal conduct.

199. In the instant action, upon information and belief, no witness statements were taken at the time of the incident.

200. Moreover, upon information and belief, NYPD Police Officers threatened and demanded that members of the crowd put away their cellphones so as to not record and/or come forward with video of the incident.

201. Upon information and belief, NYPD Police Officers responding to the June 1, 2012 incident, threatened local bodega and/or business owners not to come forward with any surveillance footage capturing the attacks on Mr. Menninger and Judge Raffaele.

202. Additionally, upon information and belief, **Defendants conceded to Judge Raffaele that they had not interviewed any non-police witnesses prior to informing Judge Raffaele that no charges would be brought against the Unknown Officer**.

203. Upon information and belief, **the first non-police witness was not interviewed until on or about 6 weeks after the incident**.

204. Upon information and belief, Defendants policies and/or customs insulate NYPD Police Officers who engage in criminal and/or other serious official misconduct from detection, prosecution and/or punishment and are maintained with deliberate indifference to that obvious and widely known effect.

205. Upon information and belief, NYPD Police Officers have for years engaged in the practice of actively and/or passively covering up the misconduct of fellow Police Officers by failing to come forward and/or failing to accurately given statements as to the misconduct which they are aware, thereby establishing a "code of silence."

206. Upon information and belief, the code of silence is so ingrained in the NYPD that is may very well be considered a policy of the City of New York.

207. Upon information and belief, Defendants are deliberately indifferent to the need for more training, rules and regulations relating to NYPD Police Officers who witnessed and/or have information regarding misconduct by fellow officers.

208. Upon information and belief, the City has failed to properly sanction and/or discipline NYPD Police Officers who are aware of and subsequently conceal and/or aid and abet violations of

citizens' constitutional rights by other NYPD Police Officers, thereby encouraging NYPD Police Officers such as the Unknown Officer to violate the rights of citizens, including but not limited to, Judge Raffaele.

209. Thus, upon information and belief, Defendants allow NYPD Police Officers to believe they can engage in misconduct because they are secure in the knowledge that their fellow NYPD Police Officers will not intervene and/or given evidence against them.

210. The Defendants' systemic deficiencies include but are not limited to:

      a. Preparation of investigative reports designed to vindicate the conduct of NYPD Police Officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

      b. Preparation of investigative reports which uncritically rely solely on the word of NYPD Police Officers who systematically fail to credit testimony of non-police witnesses.

      c. Preparation of investigative reports that omit and/or ignore factual information that contradicts NYPD Police Officers' accounts;

      d. Failure to properly review investigative reports by supervisory NYPD Police Officers for accuracy and/or completeness; and

      e. Failure to identify potential code of silence violations and maintain accurate records of allegations of such misconduct.

211. The foregoing systemic deficiencies of the danger of harm to citizens, including Judge Raffaele. The need for more or different training and discipline are polices, practices and customs of the City have caused NYPD Police Officers, including Defendants in the instant

action, to believe that they can violate citizens' constitutional rights with impunity and that their fellow NYPD Police Officers will conceal such conduct, including providing false statements and/or reports, make it a foreseeable result that NYPD Police Officers will violate citizens' constitutional rights.

212. As a direct and proximate result of the City's policies and their deliberate indifference, Defendants were able to violate Judge Raffaele's constitutional rights for which he suffered the injuries and damages.

## COUNT XI

## PENDENT CLAIM OF BATTERY

213. Paragraphs 1-212 are incorporated by reference as though fully set forth.

214. Upon information and belief, by his actions, as set forth above and as **supported by video evidence**, defendant the Unknown Officer, committed atrocious acts of battery against Judge Raffaele which include striking him no less than two times, the second being a brutal karate chop to Judge Raffaele's neck.

215. The City is responsible for the excessive and unnecessary physical force used by the Unknown Officer because the conduct occurred while he was acting in the scope of his employment.

216. As a result of the Unknown Officer's excessive and unnecessary physical force used against him, Judge Raffaele suffered severe and serious physical and mental injuries.

## COUNT XII

## PENDENT CLAIM OF PRIMA FACIE TORT

217. Paragraphs 1-216 are incorporated by reference as though fully set forth.

218. Upon information and belief, by his actions, as set forth above, defendant the Unknown Officer inflicted harm upon Judge Raffaele, without excuse and/or justification, out of disinterested malevolence.

## COUNT XIII

## PENDENT CLAIMS FOR MAKING INJURIOUS FALSE AND/OR FRADULENT STATEMENTS

219. Paragraphs 1-218 are incorporated by reference as though fully set forth.

220. Defendants had an obligation to accurately and reliably report information that would be relevant to the attack on Judge Raffaele.

221. Upon information and belief, Defendant NYPD Police Officers falsely stated that Judge Raffaele had been acting aggressively, charged the NYPD officers protective circle and that the Unknown Officer only struck Judge Raffaele once in the chest and not in the throat.

222. The false information and/or written statements provided by the defendant NYPD Police Officers denied Judge Raffaele his constitutional rights and insulated the Unknown Officer from facing any discipline.

## COUNT XIII

## PENDENT CLAIMS FOR RESPONDEAT SUPERIOR

223. Paragraphs 1-222 are incorporated by reference as though fully set forth.

224. Upon information and belief, at all relevant times, all defendant NYPD Police Officers were employees of the City and were acting for, upon and/or in furtherance of the business of the City within the scope of their employment.

225. Thus, the City is liable under the doctrine of *respondeat superior* for their tortious actions.

## COUNT XIV

### SLANDER AND LIBEL PER SE

226. Paragraphs 1-225 are incorporated by reference as though fully set forth.

227. Upon information and belief, Defendants damaged Judge Raffaele's reputation by falsely claiming orally and/or in writing that Judge Raffaele acted aggressively and illegally toward the NYPD Police Officers by forcefully entering into a safety perimeter setup by NYPD Police Officers at the site of the June 1, 2012, incident.

228. Moreover, Defendants damaged Judge Raffaele's reputation by making written and oral statements that questioned Judge Raffaele's integrity, honesty and/or reliability and prevented an honest investigation to reveal the truth regarding what really happened during the June 1, 2012 incident.

229. Defendants' written and oral statements were made to and/or in the presence of third parties.

230. Defendants' written and oral statements have adversely effected and/or raise the inference that Judge Raffaele lacks the integrity, honesty and/or reliability to carry out his duties as a Supreme Court Justice for the State of New York.

231. As a proximate and direct result of Defendants' conduct, Judge Raffaele suffered the injuries and damages.

**WHEREFORE**, Plaintiff Judge Raffaele requests the following relief jointly and severally as against all of the Defendants:

1. Award compensatory damages in an amount in excess of $150,000.00 to be determined at trial;

2. Award punitive damages in an amount in excess of $150,000.00 to be determined at trial;

3. Award equitable relief against the Defendants;

4. Disbursements, costs and attorneys' fees; and

5. All other relief this Court may deem just and proper.

Dated: August 13, 2013
      Jamaica, New York

BARAK P. CARDENAS, ESQ. (BC-1276)
CARDENAS ISLAM & ASSOC., P.L.L.C.
*Attorneys for Plaintiff Thomas D. Raffaele*
175-61 Hillside Ave. Ste. 302
Jamaica, NY 11432
Tel.: (914) 861-5164
Fax: (914) 861-0099 (Not for Service)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

THOMAS D. RAFFAELE,

No.

Plaintiff,

- against -

**VERIFICATION**

THE CITY OF NEW YORK; NEW YORK CITY CIVILIAN
COMPLAINT REVIEW BOARD; RAYMOND W. KELLY, in
his official capacity as Police Commissioner for the City of New
York; RICHARD A. BROWN, in his official capacity as
QUEENS DISTRICT ATTORNEY, DANIEL O'LEARY,
individually and in his official capacity as an Assistant District
Attorney for Queens County, PETER A. CRUSCO, individually
and in his official capacity as an Assistant District Attorney of
Queens County, JON-KRISTIAN RZONCA, individually and
in his official capacity as a New York City Police Officer;
RICHARD LEE, individually and in his official capacity as a
New York City Police Officer; and "JANE and JOHN DOE #1-
20", individually and in their official capacity as New York City
Police Officers,

Defendant(s).
------------------------------------------------------------------------X

I, Thomas D. Raffaele, am the plaintiff in the above-captioned action. I have read the
foregoing annexed Summons and Verified Complaint. I know the contents thereof, and that the
same is true to my knowledge, except as to the matters stated to be alleged upon information and
belief, and that as to those matters I believe them to be true.

Dated: August 13, 2013
       Jamaica, New York

THOMAS D. RAFFAELE

Sworn to before me this day

13 August, 2013

NOTARY PUBLIC

EBONIE V NISBETT
Notary Public - State of New York
NO. 01NI6248573
Qualified in Queens County
My Commission Expires 4/19/15