UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

X------------------------------------------------------------------------

THOMAS D. RAFFAELE,

Plaintiff,

- against -

THE CITY OF NEW YORK; RAYMOND W. KELLY, individually and in his official capacity as Police Commissioner for the City of New York; RICHARD A. BROWN, in his official capacity as the Queens District Attorney; DANIEL O'LEARY, individually and in his official capacity as an Assistant District Attorney for Queens County; PETER A. CRUSCO, individually and in his official capacity as an Assistant District Attorney of Queens County; LUIS SAMOT, individually and in his official capacity as a New York City Police Officer; RUSSELL LAWRY, individually and in his official capacity as a New York City Police Officer; JON-KRISTIAN RZONCA, individually and in his official capacity as a New York City Police Officer; MOSES LEE, individually and in his official capacity as a New York City Police Officer; CARON ADDESSO, individually and in her official capacity as a New York City Police Officer; DAVID TAORMINA, individually and in his official capacity as a New York City Police Officer; ANIBAL MARTINEZ, individually and in his official capacity as a New York City Police Officer; and NICHOLAS GIGANTE, individually and in his official capacity as a New York City Police Officer,

Defendant(s).

X------------------------------------------------------------------------

AMENDED VERIFIED
COMPLAINT

13 CV 4607 (KAM) (VVP)

Plaintiff, THOMAS D. RAFFAELE ("Judge Raffaele" and/or the "Plaintiff") by and through his attorneys, the Law Offices of CARDENAS, ISLAM & ASSOCIATES, P.L.L.C., as and for his Amended Verified Complaint, against Defendants the CITY OF NEW YORK (the "City"); RAYMOND W. KELLY ("Commissioner Kelly") individually and in his official capacity as the Police Commissioner for the City of New York; RICHARD A. BROWN ("DA Brown"), individually and in his official capacity as the Queens District Attorney; DANIEL

O'LEARY ("ADA O'Leary") individually and in his official capacity as an Assistant District Attorney for Queens County; PETER A. CRUSCO ("ADA Crusco"), individually and in his official capacity as an Assistant District Attorney for Queens County; LUIS SAMOT ("Officer Samot"), individually and in his official capacity as a New York City Police Officer; RUSSELL LAWRY ("Officer Lawry"), individually and in his official capacity as a New York City Police Officer; JON-KRISTIAN RZONCA ("Sergeant Rzonca"), individually and in his official capacity as a Sergeant in the New York City Police Department (the "NYPD"); MOSES LEE ("Officer Lee"), individually and in his official capacity as a New York City Police Officer; CARON ADDESSO ("Sergeant Addesso"), individually and in her official capacity as a Sergeant in the NYPD; DAVID TAORMINA ("Sergeant Taormina"), individually and in his official capacity as a Sergeant in the NYPD; ANIBAL MARTINEZ ("Officer Martinez"), individually and in his official capacity as a New York City Police Officer; and NICHOLAS GIGANTE ("Officer Gigante"), individually and in his official capacity as a New York City Police Officer.

Plaintiff, Judge Raffaele demands a jury trial and alleges as follows as all upon information and belief;

## INTRODUCTION

1.     This action arises, from among other things, an unprovoked and vicious attack on the Plaintiff, Hon. Justice Thomas D. Raffaele, a Supreme Court Justice for the State of New York, County of Queens, at the hands of the Defendant, Luis Samot, an on-duty NYPD Police Officer assigned to Transit District 20 and the subsequent conspiracy by the Defendants, including but not limited to, Sergeant Rzonca, Sergeant Addesso, Sergeant Taormina, Officer Lee, Officer Martinez, Officer Gigante and Officer Lawry to hide and/or cover up Officer

Samot's wrongful actions, including but not limited to his attack on Judge Raffaele. Additionally, Defendants commenced a "smear campaign" against Judge Raffaele by publishing defamatory statements to multiple third-parties.

2.      Defendants' actions denied Judge Raffaele his basic civil rights and allowed culpable individuals to escape accountability, in part by submitting false statements and otherwise grossly failing to supervise the defendant NYPD Police Officers for actions that were unconstitutional, tortious and unnecessarily violent.

## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988; the First and Fourteenth Amendments to the United State Constitution and the laws of the State of New York.

4.      Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343(1-4) and 2202. Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6.      Plaintiff, Hon. Justice Thomas D. Raffaele is a U.S. citizen with his primary residence located in the State of New York, County of Queens. Judge Raffaele is a Justice of the Supreme Court of the State of New York, County of Queens.

7.      Defendant, the City of New York, is a municipal corporation duly incorporated and existing under the laws of the State of New York. The City established and maintains the NYPD as a constituent department of the City. At all relevant times herein, the City, acting

3

through the NYPD, is responsible for the policies, practices, supervision and conduct of all NYPD personnel. Moreover, the City is responsible for ensuring that NYPD personnel obey the laws, rules, and regulations of the United States and the State of New York.

8. Defendant, Raymond W. Kelly, at all relevant times herein, was the Police Commissioner for the City of New York, with supervisory authority over all officers and/or operations of the NYPD. He is sued here in his individual and official capacity.

9. Defendant, Richard A. Brown, at all relevant times herein, is the District Attorney for the State of New York, County of Queens, with supervisory authority over all employees, investigations and/or operations of the Queens District Attorney's Office. He is sued here in his individual and official capacity.

10. Defendant, Daniel O'Leary, at all relevant times herein, is an Assistant District Attorney for the State of New York, County of Queens. He is sued here in his individual and official capacity.

11. Defendant, Peter A. Crusco, at all relevant times herein, is an Assistant District Attorney for the State of New York, County of Queens. He is sued here in his individual and official capacity.

12. Defendant, Luis Samot, at all relevant times herein, is a Police Officer with the NYPD and employed by the City. He is sued here in his individual and official capacity.

13. Defendant, Russell Lawry, at all relevant times herein, was a Police Officer with the NYPD and employed by the City. He is sued here in his individual and official capacity.

14. Defendant, Jon-Kirsten Rzonca, at all relevant times herein, is a Sergeant with the NYPD and employed by the City. He is sued here in his individual and official capacity.

15. Defendant, Moses Lee, at all relevant times herein, is a Police Officer with the NYPD and employed by the City. He is sued here in his individual and official capacity.

16. Defendant, Caron Addesso, at all relevant times herein, is a Sergeant with the NYPD and employed by the City. She is sued here in her individual and official capacity.

17. Defendant, David Taormina, at all relevant times herein, is a Sergeant with the NYPD and employed by the City. He is sued here in his individual and official capacity.

18. Defendant, Anibal Martinez, at all relevant times herein, is a Police Officer with the NYPD and employed by the City. He is sued here in his individual and official capacity.

19. Defendant, Nicholas Gigante, at all relevant times herein, is a Police Officer with the NYPD and employed by the City. He is sued here in his individual and official capacity.

## NOTICE OF CLAIM PREREQUISITE

20. On or about August 29, 2012, Judge Raffaele, in furtherance of his causes of action, filed a timely Notice of Claim against the City in compliance with General Municipal Law §50.

21. More than Thirty (30) days have elapsed since service of said notice and the City has failed to pay and/or adjust the claim.

22. The City dispensed the need to hold a 50-h examination by failing to schedule and/or question Judge Raffaele in advance of this lawsuit.

23. This action has been commenced within one year and ninety days after the happening of the events that took place on or about June 1, 2012, from which these claims arise.

5

## FACTUAL AND GENERAL ALLEGATIONS

24.     Upon information and belief, on or around 12:00AM on June 1, 2012, Plaintiff Judge Raffaele and his associate Muhammad Rashid ("Mr. Rashid") completed delivering items donated to Mr. Rashid's tutoring center, Smart Academia located at 72-24 Broadway, 4th Floor, Jackson Heights, New York 11372.

25.     Upon information and belief, on or about 12:00AM on Friday, June 1, 2012, Judge Raffaele and Mr. Rashid exited Smart Academia and traveled east on 37th Road toward 74th Street to return car keys Mr. Rashid previously borrowed.

26.     Upon information and belief, while traveling east on 37th Road, Mr. Rashid and Judge Raffaele noticed a blue and white NYPD vehicle, Id. No. 3391, parked at the intersection of Broadway and 73rd Street outside Diversity Plaza.

27.     Upon information and belief, on or about 12:00AM on Friday, June 1, 2012, Judge Raffaele and Mr. Rashid arrived at the intersection of 37th Road and 74th Street in Jackson Heights, New York.

28.     Upon information and belief, as Judge Raffaele and Mr. Rashid approached the intersection and turned the corner looking northbound on 74th Street, they noticed an anxious and agitated crowd gathering and observing two NYPD Officers, later identified as Officer Samot and Officer Lawry.

29.     Upon information and belief, Judge Raffaele directly observed Charles Menninger ("Mr. Menninger"), a homeless man commonly known in the neighborhood, being restrained by Officer Samot.

30.     Upon information and belief, Officer Lawry was standing on 74th Street and kicking a metal pipe toward Mr. Menninger.

31.     Upon information and belief, Judge Raffaele observed that Mr. Menninger was shirtless, face down in middle of 74th Street, his head pointing eastbound toward the middle of 74th Street. Mr. Menninger's hands were handcuffed behind his back.

32.     Judge Raffaele observed Officer Samot kneeling with force on Mr. Menninger's left side.

33.     Upon information and belief, Officer Samot repeatedly stood up and drove his right knee into the back of Mr. Menninger with brutal force.

34.     Mr. Menninger was not attempting to stand up, resist or otherwise flee from Officer Samot's repeated attack.

35.     Judge Raffaele heard Mr. Menninger pleading with Officer Samot and Officer Lawry "I beg you please stop," while Officer Samot continued driving his knee into Mr. Menninger's back.

36.     Officer Samot continued assaulting Mr. Menninger despite cries and pleas to stop from Mr. Menninger and members of the growing crowd.

37.     Judge Raffaele observed Officer Samot continue to attack Mr. Menninger.

38.     Judge Raffaele noticed that Officer Samot's actions created a growing crowd around the two NYPD Police Officers.

39.     Judge Raffaele observed the crowd plead with the Officer Samot and Officer Lawry to stop the use of excessive force on Mr. Menninger because he was clearly not resisting and already subdued.

40.     Specifically, Judge Raffaele heard a female observer tell Officer Samot and Officer Lawry "I'm a nurse. You are injuring him. You have to stop."

41. Upon information and belief, multiple members of the crowd began using their cell phone cameras to document the incident.

42. Judge Raffaele observed the crowd become increasingly larger and aggressive toward the Officer Samot and Officer Lawry because of their continuing use of excessive force against Mr. Menninger.

43. Judge Raffaele walked into the Intersection away from where Officer Samot and Officer Lawry were restraining Mr. Menninger and called the 911 Emergency Line.

44. Upon information and belief, on or around 12:08AM on Friday, June 1, 2012, Judge Raffaele spoke with a 911 Operator and requested that additional NYPD Police Officers quickly be sent to assist and/or protect the safety of Officer Samot and Officer Lawry.

45. Judge Raffaele also advised the 911 operator that an ambulance should be sent as well.

46. Subsequently, upon information and belief, Judge Raffaele walked back to the sidewalk corner of 74th Street and 37th Road and attempted to calm down the growing crowd and move them away from Mr. Menninger and the NYPD Police Officers.

47. Shortly thereafter, additional NYPD Police Officers, including but not limited to defendants Sergeant Rzonca, Sergeant Taormina, Sergeant Addesso, Officer Martinez and Officer Lee, arrived at the scene.

48. Upon information and belief, the additional assisting NYPD Police Officers, setup a human safety perimeter around Mr. Menninger, Officer Samot, and Officer Lawry in middle of 74th Street and began managing the large crowd.

49.     Judge Raffaele did not at any time enter into the safety perimeter set up by the NYPD Police Officers and any interaction with NYPD Police Officers, including, but not limited to Officer Samot occurred outside of the safety perimeter.

50.     Upon information and belief, numerous NYPD Police Officers aggressively approached the crowd and demanded individuals cease video recording and/or taking pictures of the incident.

51.     Moreover, upon information and belief, Judge Raffaele was later informed by numerous witnesses that NYPD Police Officers made threatening comments toward members of the crowd to keep quiet and not come forward about what they had observed.

52.     Additionally, upon information and belief, NYPD Police Officers visited and threatened local bodega and shop owners so that they would not release any security footage recorded during the June 1, 2012 incident.

53.     However, at no time herein did the NYPD Police Officers ever remove Officer Samot and Officer Lawry from the tension filled site of the incident.

54.     Upon information and belief, Judge Raffaele observed and/or heard members of the crowd make verbal statements toward Officer Samot, expressing in sum and substance that he had been too rough and/or otherwise acted wrongfully.

55.     Upon information and belief, **as supported by video evidence**, the crowd was spread out and did not advance into the safety perimeter setup by the NYPD Police Officers.

56.     Upon information and belief, Judge Raffaele observed Officer Samot verbally engage members of the crowd, yell vulgar obscenities at them and state that they (the crowd) did not have a right to comment on his actions.

57.     Upon information and belief, **as supported by video evidence,** Officer Samot told multiple crowd members to "get the fuck back, go."

58.     Upon information and belief, at all times herein, Judge Raffaele never observed any member of the crowd approach Officer Samot, any of the other Police Officers, or enter the safety perimeter set up around Mr. Menninger.

59.     Additionally, NYPD Police Officer Joseph DiFilippi (Officer DiFilippi) stated that the crowd was approximately Seven (7) to Ten (10) feet away from the Officers and Mr. Menninger.

60.     Officer DiFilippi stated that at no time did he observe any civilians advance or charge through police lines.

61.     Upon information and belief, **as supported by video evidence,** Judge Raffaele was stood approximately 10-15 feet away from the NYPD Police Officers' safety perimeter and/or Officer Samot.

62.     Moreover, upon information and belief, **as supported by video evidence,** Judge Raffaele observed Officer Samot become enraged over the crowds' verbal barbs and violently charged toward random members of the crowd.

63.     Upon information and belief, **as supported by video evidence,** Judge Raffaele observed Officer Samot violently shove and attack random members of the crowd without provocation.

64.     Moreover, **as supported by video evidence,** Officer Samot charged up to Judge Raffaele, who was approximately 15 feet away from the NYPD Police Officers, and shoved him without provocation using his right arm.

65. **As supported by video evidence**, Officer Samot shoved Judge Raffaele without warning and/or any explanation why he needed to use physical force against Judge Raffaele.

66. **As supported by video evidence, Officer Samot also struck Judge Raffaele in the neck using a "karate chop-like" move with his left hand immediately after pushing Judge Raffaele with his right hand.**

67. **As supported by video evidence, Officer Samot attacked Judge Raffaele with AT LEAST 4-5 NYPD POLICE OFFICERS OBSERVING HIS ACTIONS.**

68. Upon information and belief, Judge Raffaele did not make any derogatory statements and/or physical threatening gestures toward Officer Samot that would reasonably justify his use of physical force against him.

69. Moreover, Judge Raffaele did not retaliate and/or attempt to strike back at Officer Samot in any way.

70. Judge Raffaele was overcome with blinding pain as a result of Officer Samot's karate chop to the neck. His ability to speak and/or breathe properly was temporarily lost.

71. Upon information and belief, no NYPD Police Officer at the scene restrained Officer Samot from using physical force against members of the crowd, verbally threatening and engaging the crowd, and/or came to Judge Raffaele's aid.

72. Upon information and belief, Officer Samot was moved away by other NYPD Police Officers immediately AFTER he struck Judge Raffaele in the throat.

73. Upon information and belief, after Judge Raffaele regained a limited ability to speak, he immediately informed Officer Lee that he wanted to file an official report and/or complaint against Officer Samot.

74. Upon information and belief, Officer Lee informed Judge Raffaele that he "can't do that." Judge Raffaele immediately demanded to speak to the Commanding Officer.

75. Shortly thereafter, Sergeant Rzonca approached Judge Raffaele and identified himself.

76. Judge Raffaele identified himself as a New York State Supreme Court Judge to Sergeant Rzonca and informed him that he had been brutally attacked and struck in the neck by an Unknown NYPD Police Officer, later identified as Officer Samot.

77. Upon information and belief, while talking to Sergeant Rzonca, Judge Raffaele displayed numerous signs of extreme pain and/or discomfort in the neck area where Officer Samot struck him.

78. Judge Raffaele demanded that Sergeant Rzonca take his statement for a formal complaint against Officer Samot.

79. Sergeant Rzonca did not take Judge Raffaele's statement but promised to investigate and went to speak with a group of NYPD Police Officers, which upon information and belief included Officer Samot and Officers that witnessed the attack against Judge Raffaele.

80. Nevertheless, after speaking with the group of NYPD Police Officers, Sergeant Rzonca returned to Judge Raffaele and stated "I don't know what you are talking about."

81. Upon information and belief, the group of NYPD Officers, including Officer Samot and Officers that witnessed the unprovoked use of excessive force against Judge Raffaele told Rzonca that nothing had happened.

82. Moreover, upon information and belief, Sergeant Rzonca did not offer Judge Raffaele any alternative recourse or avail himself to take Judge Raffaele's statement.

12

83.	Upon information and belief and **supported by video evidence,** Sergeant Rzonca was several feet away at the time Officer Samot assaulted Judge Raffaele.

84.	Upon information and belief and **supported by video evidence,** Sergeant Rzonca witnessed Officer Samot's attack and approached Judge Raffaele as Officer Samot walked away.

85.	Judge Raffaele became frustrated with Sergeant Rzonca's purposeful inaction and continued to experience excruciating pain in the neck area where Officer Samot struck him.

86.	Nonetheless, upon information and belief, Judge Raffaele was calm and unwilling to confront Sergeant Rzonca and/or any other the NYPD Police Officer.

87.	Upon information and belief, after being turned away by Sergeant Rzonca, Judge Raffaele and Mr. Rashid continued walking north on 74th Street to complete their original task of returning a set of car keys.

88.	However, upon information and belief, while walking northbound on 74th Street with Mr. Rashid to return the car keys, Judge Raffaele observed **Officer Samot and Officer Lawry still on scene and took their picture using his cell phone camera.**

89.	Upon information and belief, Sergeant Rzonca lied to Judge Raffaele when he told him that he did not know anything about the attack against Judge Raffaele.

90.	Upon information and belief, Judge Raffaele and Mr. Rashid traveled westbound on 37th Road after dropping off the car keys.

91.	Upon information and belief, Judge Raffaele continued to experience excruciating neck pain and labored breathing due to Officer Samot's unprovoked use of excessive force against him.

92.     Upon information and belief, on or around 12:49AM while traveling westbound on 37th Road, Judge Raffaele and Mr. Rashid again observed Officer Samot and Officer Lawry enter the same NYPD vehicle, Id. No. 3391, they saw before originally arriving at the scene.

93.     Thus, upon information and belief, defendant NYPD Police Officers, including, but not limited to, Officer Lee and Sergeant Rzonca, intentionally concealed Officer Samot's identity from Judge Raffaele in an attempt to protect Officer Samot from discipline and/or prosecution as a result of his unprovoked use of excessive force against Judge Raffaele and to frustrate any investigation into the events at issue in this action.

94.     Shortly thereafter, upon information and belief, Judge Raffaele traveled back to his residence, a mere two blocks north of where the incident occurred.

95.     However, as discussed above, Judge Raffaele felt intense pain in the neck area, had difficulty breathing and suffered a limited range of speech volume as a direct result of Officer Samot's attack.

96.     Moreover, upon information and belief, Judge Raffaele feared he suffered serious physical injury due to the pain in his neck area, labored breathing and limited vocal volume did not disappear over time.

97.     Upon information and belief, on or about 1:00AM on June 1, 2012, Judge Raffaele checked himself into the Emergency Room at the Elmhurst Hospital Center.

98.     The Elmhurst Hospital Center is approximately 4 blocks southeast of where Judge Raffaele was attacked by Officer Samot.

99.     While at the Elmhurst Hospital Center, Judge Raffaele was checked for internal injuries, including but not limited to a crushed larynx.

14

100. Moreover, upon information and belief, Judge Raffaele advised the medical staff that his injuries were the result of an attack.

101. Upon information and belief, the Elmhurst Hospital Center medical staff summoned two NYPD Police Officers, names unknown, from the 110th Precinct to take Judge Raffaele's statement.

102. Upon information and belief, the NYPD Police Officers belonging to the 110th Precinct met with Judge Raffaele and were initially interested and/or willing to take his complaint against Officer Samot.

103. However, upon information and belief, the NYPD Police Officers belonging to the 110th Precinct were called away out of Judge Raffaele's sight just a few moments after they had started talking to him.

104. Upon information and belief, Mr. Rashid, who had arrived at the Emergency Room shortly after Judge Raffaele to check on him, observed Officer Lee and Sergeant Rzonca separately speaking with the NYPD Police Officers from the 110th Precinct on two separate occasions in the Emergency Room. Mr. Rashid could not hear what was being said.

105. Subsequently, upon information and belief, after talking to Sergeant Rzonca and Officer Lee, the NYPD Police Officers belonging to the 110th Precinct returned to Judge Raffaele and informed him that the incident had occurred outside the 110th Precinct's geographical limitations.

106. As a result, upon information and belief, the NYPD Police Officers belonging to the 110th Precinct informed Judge Raffaele that they would not take his statement and advised him to file a complaint at his local precinct.

16

107. Upon information and belief, the NYPD Police Officers belonging to the 110th Precinct declined to take Judge Raffaele's statement almost immediately after they had been seen speaking with Officer Lee and Sergeant Rzonca.

108. Upon information and belief, Officer Lee and Sergeant Rzonca advised the NYPD Police Officers belonging to the 110th Precinct of the nature of Judge Raffaele complaint and directed them to not take his statement.

109. On or around 5:30 A.M. on June 1, 2012, Judge Raffaele was discharged from Elmhurst Hospital Center.

110. On or about the week of July 8, 2012, in the days immediately following the attack, Judge Raffaele met with Queens County Assistant District Attorney, Daniel O'Leary and met with detectives with the NYPD's Internal Affairs Bureau ("Internal Affairs").

111. Judge Raffaele filed a complaint with the New York Civilian Complaint Review Board (the "NYCCRB"), the Queens District Attorney's Office and Internal Affairs (Complaint No. 12-298448).

112. Upon information and belief, Judge Raffaele provided ADA O'Leary, the NYCCRB and Internal Affairs the names and contact information Mr. Rashid and S.M. Ismail ("Mr. Ismail"), two eye witnesses who observed what happened on the night of June 1, 2012.

113. Upon information and belief, as supported by video evidence, Mr. Rashid was standing right next to Judge Raffaele when he was attacked by Officer Samot.

114. Upon information and belief, as supported by video evidence, Mr. Ismail was standing approximately 4-6 feet away from Judge Raffaele when he was attacked by Officer Samot. Mr. Ismail directly observed Officer Samot's actions from where he stood.

115. Upon information and belief, prior to the July 25, 2012 meeting with Judge Raffaele as further discussed below, the Queens District Attorney's Office did not interview Mr. Rashid and/or Mr. Ismail regarding the June 1, 2012 incident although Judge Raffaele provided their contact information more than 7 weeks earlier.

116. Upon information and belief, on or about July 25, 2012, Judge Raffaele met with Queens County Assistant District Attorney, Peter A. Crusco ("ADA Crusco") in his chambers.

117. Upon information and belief, ADA Crusco informed Judge Raffaele that "there was not enough evidence to prosecute."

118. Upon information and belief, ADA Crusco conceded to Judge Raffaele that the Queens District Attorney's Office did not interview, Mr. Rashid and/or Mr. Ismail even though Judge Raffaele personally vouched for their credibility and provided their contact information.

119. Upon information and belief, ADA Crusco informed Judge Raffaele that multiple NYPD Police Officers' statements contradicted Judge Raffaele's allegations against Officer Samot.

120. Upon information and belief, defendants Officer Samot, Officer Lee, Officer Martinez, Officer Gigante, Sergeant Rzonca, Sergeant Taormina and Sergeant Addesso were present at the time the aforementioned events occurred, observed and/or heard portions of what had happened, failed to intercede and/or report it to supervisory personnel and later, when questioned by Internal Affairs, gave false and misleading statements.

121. Upon information and belief, under the oath of office and the written rules and regulations promulgated by the NYPD, Police Officers and Command Personnel have an affirmative duty to intercede and prevent crimes and other misconduct committed by officers and to report such conduct whenever they become aware of it.

122. Additionally, the New York Police Department Patrol Guide (the "Patrol Guide") states in sum and substance, all members of the service have an absolute duty to report serious misconduct of which they become aware.

123. Upon information and belief, the Patrol Guide further states in sum and substance, upon observing or becoming aware of corruption or misconduct or an allegation thereof, all police officers must, among other things, promptly telephone Internal Affairs and, must provide Internal Affairs with a detailed written report setting forth what they know concerning other officers' misconduct.

124. Furthermore, the Patrol Guide states in sum and substance that conduct designed to cover up acts of corruption, prevent or discourage its report or intimidate those who would report it will be charged as an obstruction of justice or other criminal act.

125. Upon information and belief, ADA Crusco informed Judge Raffaele that one statement described Judge Raffaele as acting aggressively and allegedly charging into the safety perimeter setup by NYPD Police Officers around Mr. Menninger.

126. Upon information and belief, ADA Crusco advised Judge Raffale that the written statements submitted by defendant NYPD Police Officers falsely allege that Officer Samot only touched Judge Raffaele once on the chest with the right hand or not at all.

127. Upon information and belief, the defendant NYPD Police Officers' written statements intentionally failed to mention that Officer Samot struck Judge Raffaele with a second, left-handed karate chop to the throat.

128. Upon information and belief, the defendant NYPD Police Officers' written statements falsely allege that Judge Raffaele's throat must have been hurting because he was yelling loudly during the June 1, 2012 incident.

129.     Additionally, upon information and belief, defendant NYPD Police Officers' written statements falsely allege that Judge Raffaele assaulted the NYPD Police Officers, incited the crowd to act violently and acted like an "emotional distressed person".

130.     **As supported by video evidence,** Judge Raffaele at no time aggressively approached Officer Samot and/or any NYPD Police Officer.

131.     Also, **as supported by video evidence,** Judge Raffaele at no time attempted to breach the safety perimeter setup by NYPD Police Officers around Mr. Menninger.

132.     Moreover, **as supported by video evidence,** Officer Samot clearly struck Judge Raffaele **TWICE,** once pushing him with the right hand the second being the left handed karate chop to the neck.

133.     Upon information and belief, defendant NYPD Police Officers and Commanding Personnel devised a version of the incident that would insulate Officer Samot from disciplinary and/or criminal action.

134.     Upon information and belief, during the July 25, 2012 meeting with Judge Raffaele, ADA Crusco named the NYPD Police Officers' that submitted written statements but did not identify Officer Samot as the assailant.

135.     Moreover, upon information and belief, ADA Crusco simply quoted excerpts from the multiple NYPD Police Officers' written statements but did not provide copies of the reports to Judge Raffaele for his personal review.

136.     Upon information and belief, during the July 25, 2012, meeting ADA Crusco conceded to Judge Raffaele that his determination not to prosecute Officer Samot was made without interviewing any of Judge Raffaele's non-police witnesses.

137. Upon information and belief, Judge Raffaele alleges that Defendants did not interview ANY non-police witnesses regarding the June 1, 2012 incident despite the fact that approximately 100 people had gathered as part of the crowd.

138. Upon information and belief, Judge Raffaele asked ADA Cruso why Mr. Rashid and/or Mr. Ismail had not been interviewed almost seven weeks following the incident.

139. Upon information and belief, ADA Cruso off-handedly stated that Mr. Rashid had not answered requests sent by NYCCRB and/or Internal Affairs investigators.

140. Thus, upon information and belief, ADA Cruso stated he assumed that Mr. Rashid would equally fail to meet with NYPD Police Officers that work closely with the Queens District Attorney's Office.

141. Upon information and belief, Defendants' deliberate delay and avoidance, created a window of opportunity for the destruction of evidence, the creation of cover stories, and the pressuring of witnesses not to come forward.

142. Subsequently, upon information and belief, on or about early August 2012, shortly after ADA Cruso informed Judge Raffaele of his determination, NYPD Police Officers, who specifically work with the Queens District Attorney's Office, approached Mr. Rashid and Mr. Ismail for an interview regarding the June 1, 2012 incident.

143. Upon information and belief, ADA Cruso informed Judge Raffaele that no action would be brought against Officer Samot Mr. Rashid and/or Mr. Ismail were **BEFORE** approached for an interview.

144.    Upon information and belief, Mr. Rashid and Mr. Ismail were only interviewed so that the Queens District Attorney's Office could validate their predetermined decision not to prosecute Officer Samot.

145.    Upon information and belief, Mr. Ismail informed Judge Raffaele that the NYPD Police Officers were very aggressive during the interview.

146.    Simply said, Mr. Ismail felt as if the NYPD Police Officers were attempting to dissuade him from coming forward with his account of the June 1, 2012, events.

147.    Moreover, Mr. Ismail felt that the NYPD Police Officers discredited Mr. Ismail's account of the June 1, 2012 incident.

148.    Upon information and belief, Mr. Ismail's account, as given to the NYPD Police Officers, mirrors Judge Raffaele's account because Mr. Ismail was standing near Judge Raffaele when he was attacked by Officer Samot.

149.    Upon information and belief, after receiving messages from the Queens District Attorney's Office, Mr. Rashid availed himself for an interview at their office.

150.    Upon information and belief, while at the Queens District Attorney's Office, Mr. Rashid met with multiple investigators, names unknown at this time. The investigators identified themselves as members of Internal Affairs, NYCCRB and the Queens District Attorney's Office.

151.    Upon information and belief, Mr. Rashid informed all investigating authorities that he personally viewed Officer Samot's wrongful actions toward Mr. Menninger as well as the brutal attack on Judge Raffaele.

152.    Upon information and belief, Mr. Rashid's account of the June 1, 2012, incident is identical to Judge Raffaele's account because Mr. Rashid was standing next to Judge Raffaele at the time he was attacked by Officer Samot, as supported by video evidence.

153. Upon information and belief, the investigators and/or NYPD Police Officers working closely with the Queens District Attorney's Office completely discredited Mr. Rashid's account of the incident.

154. Upon information and belief, during the interview Mr. Rashid expressed to the Queens District Attorney's Office investigators that they were trying to manipulate his account of the incident to insulate Officer Samot and had "already decided" that no wrongdoing had happened.

**155. Mr. Rashid's and Mr. Ismail's version of Officer Samot's attack on Judge Raffaele is supported by video evidence.**

156. Upon information and belief, on or about August 22, 2012, Richard A. Brown issued a public statement on behalf of the Queens District Attorney's Office.

157. Richard A. Brown's statement expresses that "the alleged assault [on Judge Raffaele] occurred in a safety perimeter that police officers attempted to establish around the incident to contain Mr. Meninger and separate him from the growing crowd."

158. As previously mentioned, video evidence supports that Judge Raffaele at no time attempted to enter into the safety perimeter.

**159. Moreover, video evidence supports that Officer Samot charged and attacked multiple members of the "growing crowd", including but not limited to Judge Raffaele, on his own accord and far outside the NYPD Police Officers' safety perimeter around Mr. Meninger.**

160. Upon information and belief, on or about August 26, 2012, Judge Raffaele met with ADA Crusco, investigators from the NYCCRB and NYPD Police Officers belonging to Internal Affairs in his chambers.

161. Upon information and belief, during the August 26, 2012, meeting, ADA Crusco again informed Judge Raffaele that the Queens District Attorney's Office would not be bringing any charges related to Officer Samot's attack against Judge Raffaele.

162. Moreover, ADA Crusco stated in sum and substance that "nothing happened" and that Judge Raffaele had been acting aggressively, justifying Officer Samot's attack.

163. Moreover, upon information and belief, Judge Raffaele's reputation and his perceived ability to perform his duties as a Supreme Court Justice have been adversely affected by Defendants' actions, including but not limited to Richard A. Brown's public statement and ADA Crusco's numerous statements questioning Judge Raffaele's integrity, reliability, honesty and/or intent.

164. The actions of all individual defendants, as discussed above, were performed within the scope of their employment and authority, for whose acts the City is liable under the doctrine of respondeat superior.

165. On or around early June 2012, Commissioner Kelly became aware of the June 1, 2012 incident when questioned by the press during an event at Police Headquarters.

166. Upon information and belief, Commissioner Kelly failed to investigate the incident and/or take any remedial action after stating to the press that he would "check into it."

167. Moreover, upon information and belief, on or about July 7, 2012, the New York Times published a quote by Commissioner Kelly stating that "the investigation is going forward."

168. Upon information and belief, to date Commissioner Kelly never contacted Judge Raffaele to discuss the June 1, 2012 incident.

23

169.     Judge Raffaele is now brings this action as a result of Officer Samot's unprovoked use of excessive force against him, the Defendants' cover-up to wrongfully protect Officer Samot, Defendants' failure to seek any and/or all appropriate legal remedies against Officer Samot and Defendants' campaign to discredit and/or defame Judge Raffaele causing irreparable harm to his reputation.

170.     As a result of the defendants actions against Judge Raffaele, he has suffered significant monetary damages including, but not limited to, a loss of present and future income.

## CAUSES OF ACTION

## COUNT I

## 42 U.S.C. § 1983 CONSPIRACY

171.     Paragraphs 1-167 are incorporated by reference as though fully set forth at length herein.

172.     Upon information and belief, Defendants, under color of law, conspired with one another to deprive Judge Raffaele of his constitutional rights, including the right to i) be free from the intentional use of unreasonable force; ii) associate and speak freely; and iii) have access to and seek redress in the courts.

173.     Upon information and belief, Defendants engaged in the following in furtherance of the conspiracy to cover up Officer Samot's acts of brutality:

a.     Upon information and belief, defendant NYPD Police Officers and Commanding Personnel fabricated and contrived allegations that Judge Raffaele i) acted aggressively toward NYPD Police Officers; ii) had not been struck and/or had only been struck once by Officer Samot; iii) forcefully entered into the NYPD Police Officers' safety perimeter setup

around Mr. Menninger; and otherwise acted in a manner that justifies Officer Samol's attack.

b. Upon information and belief, all Defendants deliberately suppressed the truth, failed to accurately report the June 1, 2012, attack and investigate and/or prosecute Officer Samol.

c. Defendant NYPD Police Officers and Commanding Personnel were aware of Officer Samol's violent actions and have a duty to report it immediately;

d. Upon information and belief, defendant NYPD Police Officers and Commanding Personnel orchestrated a cover-up to insulate Officer Samol;

e. Upon information and belief, defendant NYPD Police Officers and Commanding Personnel refused to come forward with evidence and/or information that would incriminate the individuals involved, in violation of their sworn duty as NYPD Police Officers, public servants and/or officials;

f. Upon information and belief, all Defendants discouraged individual witnesses from speaking truthfully and discredited individuals who did answer the investigators' questions;

g. Upon information and belief, defendant NYPD Police Officers and Commanding Personnel openly threatened and intimidated on-scene witnesses from recording and/or complaining about the June 1, 2012 attack.

h.     Upon information and belief, defendant NYPD Police Officers and Commanding Personnel submitted false police reports, statements and/or testimony to support and/or corroborate the fabricated allegations against Judge Raffaele and insulated Officer Samot from administrative and/or criminal sanctions; and

i.     Upon information and belief, defendant NYPD Police Officers and Commanding Personnel knowingly gave false and/or misleading statements to NYPD Investigators and/or Federal Investigators to insulate Officer Samot from administrative and/or criminal sanctions.

j.     Upon information and belief, defendants Commission Kelly, Richard A. Brown and the Office of the Queens District Attorney as a whole conspired to deny Judge Raffaele his constitutionally protected rights, by intentionally failing to interview any non-police witness prior and insulating Officer Samot from administrative/criminal sanctions.

174.     Defendants, violated and/or denied Judge Raffaele his constitutionally protected rights as a direct result of the Defendants' wrongful acts.

175.     Judge Raffaele now claims damages for injuries.

## COUNT II

## 42 U.S.C. § 1983 UNREASONABLE AND EXCESSIVE FORCE

176.     Paragraphs 1-174 are incorporated by reference as though fully set forth.

177.     Upon information and belief, Officer Samot, by his conduct as described above, deprived Judge Raffaele of his constitutional right to be free from excessive and unreasonable force.

178.   Judge Raffaele now claims damages for the injuries.

## COUNT III

## 42 U.S.C. § 1983 FAILURE TO INTERCEDE

179.   Paragraphs 1-175 are incorporated by reference as though fully set forth.

180.   By their conduct and under color of state law, defendant NYPD Police Officers and Commanding Personnel, Officer Lawry, Officer Lee, Officer Martinez, Officer Gigante, Sergeant Rzonca, Sergeant Taormina, Sergeant Addesso, each had opportunities to intercede on behalf of Judge Raffaele to prevent Officer Samot's excessive use of force but due to their intentional conduct and/or deliberate indifference declined and/or refused to do so.

181.   Judge Raffaele now claims damages for the injuries.

## COUNT IV

## 42 U.S.C. § 1983 FIRST AND FOURTEENTH AMENDMENT VIOLATIONS

182.   Paragraphs 1-178 are incorporated by reference as though fully set forth.

183.   Upon information and belief, by their conduct and under the color of law all Defendants deprived Judge Raffaele of his First and Fourteenth Amendment rights to have access and to seek redress in the courts.

184.   Upon information and belief, Defendant NYPD Police Officers and Commanding Personnel engaged in a cover up in order to conceal Officer Samot's wrongful and unlawful conduct against Judge Raffaele.

185.   Additionally, upon information and belief, defendants Commissioner Kelly, DA Brown, ADA Crusco and ADA O'Leary's intentional failure and/or deliberate indifference toward conducting a thorough and unbiased investigation of Judge Raffaele's claims against

defendant NYPD Police Officers and Commanding Personnel denied Judge Raffaele his constitutionally protected rights.

186.   Upon information and belief, Defendants' efforts to conceal the truth and failure to investigate Judge Raffaele's claims continue to the detriment of Judge Raffaele.

187.   Judge Raffaele suffered injuries and damages as a direct result of Defendants' actions.

## COUNT V

## 42 U.S.C. § 1983(3) CONSPIRACY TO HINDER PROVISION OF EQUAL PROTECTION UNDER THE LAW

188.   Paragraphs 1-185 are incorporated by reference as though fully set forth.

189.   Upon information and belief, Defendant NYPD Police Officers and Commanding Personnel conspired to hinder and prevent the constituted authorities of the State of New York from securing and providing Judge Raffaele equal protection under the law.

190.   Upon information and belief, Defendant NYPD Police Officers and Commanding Personnel engaged in a cover up in furtherance of the conspiracy, and to conceal the crimes and/or misconduct of Officer Samot.

191.   Upon information and belief, among the actions taken in furtherance were the defendant NYPD Police Officers and Commanding Personnel's false statements made to Federal and State Investigators, a clear betrayal of their legal duty to report incriminating acts to the proper authorities.

192.   Additionally, upon information and belief, defendants Commissioner Kelly, DA Brown, ADA Crusco and ADA O'Leary's intentional failure and/or deliberate indifference toward conducting a thorough and unbiased investigation of Judge Raffaele's claims against

defendant NYPD Police Officers and Commanding Personnel denied Judge Raffaele equal protection under the law.

193. As a direct and proximate result, Judge Raffaele suffered injuries and damages.

## COUNT VI

### 42 U.S.C. § 1985(2) CONSPIRACY TO IMPEDE DUE COURSE OF JUSTICE

194. Paragraphs 1-190 are incorporated by reference as though fully set forth.

195. Upon information and belief, among the actions taken in furtherance were the defendant NYPD Police Officers and Commanding Personnel's false statements made to Federal and State Investigators, a clear betrayal of their legal duty to report incriminating acts to the proper authorities.

196. Additionally, upon information and belief, defendants Commissioner Kelly, DA Brown, ADA Crusco and ADA O'Leary's intentional failure and/or deliberate indifference toward conducting a thorough and unbiased investigation of Judge Raffaele's claims against defendant NYPD Police Officers and Commanding Personnel.

197. Defendants' actions denied Judge Raffaele equal protection under the law.

198. As a direct and proximate result of Defendants' conduct, Judge Raffaele suffered injuries and damages.

## COUNT VII

### 42 U.S.C. § 1985(2) CONSPIRACY TO OBSTRUCT FEDERAL JUSTICE

199. Paragraphs 1-195 are incorporated by reference as though fully set forth.

200. Upon information and belief, defendant NYPD Police Officers and Commanding Personnel refrained and dissuaded witnesses from giving true and/or accurate statements

regarding the incident that occurred on June 1, 2012 if approached by State and/or Federal Investigators.

201. Upon information and belief, defendant NYPD Police Officers and Commanding Personnel deterred and intimidate witnesses who might give truthful testimony that would implicate Officer Samot.

202. Additionally, defendant NYPD Police Officers and Commanding Personnel submitted false statements when their efforts to discourage truthful witness statements did not completely succeed.

203. Upon information and belief, Defendants continue to deter and discourage NYPD Police Officers from providing truthful statements to Federal Investigators about, among other things, the June 1, 2012, brutal attacks on Mr. Menninger and Judge Raffaele.

204. As a proximate and direct result of Defendants' conduct, Judge Raffaele suffered the injuries and damages.

## COUNT VIII

## 42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT

205. Paragraphs 1-201 are incorporated by reference as though fully set forth.

206. Upon information and belief, Defendants, Commissioner Kelly, DA Brown, ADA Crusco, ADA O'Leary and defendant NYPD Police Officers and Commanding Personnel, as a whole, had knowledge that a conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing and neglected and/or refused to do so.

207. Upon information and belief, Defendants could have promptly reported the brutality to authorized investigators. Their failure contributed to Judge Raffaele's suffering and continued denial of justice.

208. Upon information and belief, if defendant NYPD Police Officers and Commanding Personnel complied with the law and provided truthful information while investigating the brutality the conspiracy would not have succeeded to the extent that it continues to.

209. Additionally, if Commissioner Kelly, DA Brown, ADA Cruso and ADA O'Leary had properly investigated Judge Raffaele's claims of police brutality in a reasonable and unbiased manner the conspiracy would not have succeeded to the extent that it continues to.

210. As a proximate and direct result of Defendants' conduct, Judge Raffaele suffered injuries and damages.

## COUNT IX

## 42 U.S.C. § 1983 SUPERVISORY LIABILITY

211. Paragraphs 1-207 are incorporated by reference as though fully set forth.

212. Upon information and belief, defendants Commissioner Kelly, Sergeant Rzonca, Sergeant Taormina, and Sergeant Addesso were, at all relevant times herein, supervisory personnel in the NYPD, with oversight responsibility for Officer Samot and Officer Lawry. They are responsible for the training, instruction, supervision and/or discipline for Officer Samot who brutalized Judge Raffaele.

213. Upon information and belief, Commissioner Kelly, DA Brown, ADA Cruso, and ADA O'Leary are responsible for investigating, representing and protecting the interests of the citizens of the State of New York, like Judge Raffaele, against all wrongful acts, including but not limited to disciplining NYPD Police Officers and Commanding Personnel for crimes committed against the general public.

214. Upon information and belief, Commissioner Kelly, DA Brown, ADA Crusco, ADA O'Leary and defendant NYPD Commanding Personnel received complaints about the conduct of Officer Samot and other officers involved in the June 1, 2012 incident.

215. Upon information and belief, Commissioner Kelly and defendant NYPD Commanding Personnel knew about past complaints, aberrant behavior and/or disciplinary infractions, or in the exercise of due diligence, would have perceived that Officer Samot had conduct and/or disciplinary problems that posed an unreasonable risk of harm to the general public, including but not limited to, Judge Raffaele.

216. Upon information and belief, Commissioner Kelly and defendant NYPD Commanding Personnel knew or should have known that Officer Samot's conduct was likely to occur.

217. Upon information and belief, Commissioner Kelly and defendant NYPD Commanding Personnel failed to take any preventative and/or remedial measures to guard against the brutality and cover up. If they had taken appropriate action, Judge Raffaele would not have been injured.

218. Moreover, upon information and belief, Commissioner Kelly, DA Brown, ADA Crusco, ADA O'Leary and defendant NYPD Commanding Personnel failed to take any corrective and/or disciplinary action against Officer Samot.

219. Defendants' failure to supervise and/or discipline Officer Samot amounts to gross negligence, deliberate indifference and/or intentional misconduct which directly caused the injuries and damages suffered by Judge Raffaele described above.

## COUNT X

### 42 U.S.C. § 1983 SYSTEMIC CLAIM AGAINST CITY

220.    Paragraphs 1-216 are incorporated by reference as though fully set forth.

221.    Upon information and belief, it is the Defendants' policy and/or custom to inadequately investigate civilian complaints describing NYPD misconduct and to inadequately punish NYPD Police Officers when the civilian complaints are substantiated.

222.    Upon information and belief, the Defendants tolerated and/or allowed acts of brutality to occur unchecked.

223.    Moreover, upon information and belief, disciplinary departments and/or agents such as Internal Affairs have substantially failed in their duties to investigate misconduct and discipline transgressors.

224.    Upon information and belief, Internal Affairs investigations of brutality rarely lead to administrative trials and, in the rare instance that charges are sustained, the offending NYPD Police Officers face minimal punishment.

225.    Upon information and belief, as a result even the most horrify and brazen acts of brutality are resolved with a slap on the wrist.

226.    Moreover, upon information and belief, Defendants often take unreasonable amounts of time to interview the officers suspected of or believed to have witnessed excessive force and/or other criminal conduct.

227.    In the instant action, upon information and belief, no witness statements were taken at the time of the incident.

228.    Moreover, upon information and belief, defendant NYPD Police Officers and Commanding Personnel threatened and demanded that members of the crowd put away their cellphones so as to not record and/or come forward with video of the incident.

229.    Upon information and belief, NYPD Police Officers and Commanding Personnel responding to the June 1, 2012 incident, threatened local bodega and/or business owners not to come forward with any surveillance footage capturing the attacks on Mr. Menninger and Judge Raffaele.

230.    Additionally, upon information and belief, ADA Crusco conceded to Judge **Raffaele that they had not interviewed any non-police witnesses prior to informing Judge Raffaele that no charges would be brought against Officer Samot.**

231.    Upon information and belief, **the first non-police witness was not interviewed until on or about 6 weeks after the incident.**

232.    Upon information and belief, the City's policies and/or customs insulate NYPD Police Officers who engage in criminal and/or other serious official misconduct from detection, prosecution and/or punishment and are maintained with deliberate indifference to that obvious and widely known effect.

233.    Upon information and belief, NYPD Police Officers have for years engaged in the practice of actively and/or passively covering up the misconduct of fellow Police Officers by failing to come forward and/or failing to accurately given statements as to the misconduct which they are aware, thereby establishing a "code of silence."

234.    Upon information and belief, the code of silence is so ingrained in the NYPD that is may very well be considered a policy of the City of New York.

235. Upon information and belief, the City is deliberately indifferent to the need for more training, rules and regulations relating to NYPD Police Officers who witnessed and/or have information regarding misconduct by fellow officers.

236. Upon information and belief, the City has failed to properly sanction and/or discipline NYPD Police Officers who are aware of and subsequently conceal and/or aid and abet violations of citizens' constitutional rights by other NYPD Police Officers, thereby encouraging NYPD Police Officers such as Officer Samot to violate the rights of citizens, including but not limited to, Judge Raffaele.

237. Thus, upon information and belief, the City and Commissioner Kelly allowed NYPD Police Officers to engage in misconduct because they are secure in the knowledge that their fellow NYPD Police Officers will not intervene and/or given evidence against them.

238. The City's systemic deficiencies include but are not limited to:

a. Preparation of investigative reports designed to vindicate the conduct of NYPD Police Officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

b. Preparation of investigative reports which uncritically rely solely on the word of NYPD Police Officers who systematically fail to credit testimony of non-police witnesses.

c. Preparation of investigative reports that omit and/or ignore factual information that contradicts NYPD Police Officers' accounts;

d. Failure to properly review investigative reports by supervisory NYPD Police Officers for accuracy and/or completeness; and

35

e.     Failure to identify potential code of silence violations and maintain accurate records of allegations of such misconduct.

239.     The foregoing systemic deficiencies of the danger of harm to citizens, including Judge Raffaele. The need for more or different training and discipline are polices, practices and customs of the City have caused NYPD Police Officers, including defendant NYPD Police Officers and Commanding Personnel in the instant action, to believe that they can violate citizens' constitutional rights with impunity and that their fellow NYPD Police Officers will conceal such conduct, including providing false statements and/or reports, make it a foreseeable result that NYPD Police Officers will violate citizens' constitutional rights.

240.     As a direct and proximate result of the City's policies and their deliberate indifference, Defendants were able to violate Judge Raffaele's constitutional rights for which he suffered the injuries and damages.

## COUNT XI

## PENDENT CLAIM OF BATTERY

241.     Paragraphs 1-237 are incorporated by reference as though fully set forth.

242.     Upon information and belief, by his actions, as set forth above and as **supported by video evidence**, Officer Samot, committed atrocious acts of battery against Judge Raffaele which include striking him no less than two times, the second being a brutal karate chop to Judge Raffaele's neck.

243.     The City is responsible for the excessive and unnecessary physical force used by Officer Samot because the conduct occurred while he was acting in the scope of his employment.

244.     As a result of Officer Samot's excessive and unnecessary physical force used against him, Judge Raffaele suffered severe and serious physical and mental injuries.

## COUNT XII

### PENDENT CLAIM OF PRIMA FACIE TORT

245. Paragraphs 1-241 are incorporated by reference as though fully set forth.

246. Upon information and belief, by his actions, as set forth above, Officer Samot inflicted harm upon Judge Raffaele, without excuse and/or justification, out of disinterested malevolence.

## COUNT XIII

### PENDENT CLAIMS FOR MAKING INJURIOUS FALSE AND/OR FRAUDULENT STATEMENTS

247. Paragraphs 1-243 are incorporated by reference as though fully set forth.

248. Defendants had an obligation to diligently investigation claims and accurately report information that would be relevant to the attack on Judge Raffaele.

249. Upon information and belief, defendant NYPD Police Officers and Commanding Personnel falsely stated that Judge Raffaele had been acting aggressively, charged the NYPD officers protective circle and that Officer Samot only struck Judge Raffaele once in the chest and not in the throat.

250. The false information and/or written statements provided by defendant NYPD Police Officers and Commanding Personnel denied Judge Raffaele his constitutional rights and insulated Officer Samot from facing any discipline.

## COUNT XIII

### PENDENT CLAIMS FOR RESPONDEAT SUPERIOR

251. Paragraphs 1-247 are incorporated by reference as though fully set forth.

252.    Upon information and belief, at all relevant times, Commissioner Kelly, DA Brown, ADA Crusco, ADA O'Leary, defendant NYPD Police Officers and Commanding Personnel were employees of the City and were acting for, upon and/or in furtherance of the business of the City within the scope of their employment.

253.    Thus, the City is liable under the doctrine of *respondeat superior* for their tortious actions.

## COUNT XIV

## SLANDER AND LIBEL PER SE

254.    Paragraphs 1-250 are incorporated by reference as though fully set forth.

255.    Upon information and belief, the City by and through public statements issued by DA Brown, ADA Crusco, ADA O'Leary and Commissioner Kelly damaged Judge Raffaele's reputation by falsely claiming orally and/or in writing that Judge Raffaele acted aggressively and illegally toward the NYPD Police Officers by forcefully entering into a safety perimeter setup by NYPD Police Officers at the site of the June 1, 2012, incident.

256.    Moreover, all Defendants damaged Judge Raffaele's reputation by making written and oral statements that questioned Judge Raffaele's integrity, honesty and/or reliability and prevented an honest investigation to reveal the truth regarding what really happened during the June 1, 2012 incident.

257.    Defendants' written and oral statements were made to and/or in the presence of third parties.

258.    Defendants' written and oral statements have adversely effected and/or raise the inference that Judge Raffaele lacks the integrity, honesty and/or reliability to carry out his duties as a Supreme Court Justice for the State of New York.

259.    As a proximate and direct result of Defendants' conduct, Judge Raffaele suffered

the injuries and damages including, but not limited to, loss of present and future income.

**WHEREFORE,** Plaintiff Judge Raffaele requests the following relief jointly and

severally as against all of the Defendants:

1.    Award compensatory damages in an amount to be determined at trial;

2.    Award punitive damages in an amount to be determined at trial;

3.    Award equitable relief against the Defendants;

4.    Disbursements, costs and attorneys' fees; and

5.    All other relief this Court may deem just and proper.

Dated:    January 28, 2014
          Jamaica, New York

_____

BAKAR P. CARDENAS, ESQ. (BC-1276)
CARDENAS ISLAM & ASSOC., P.L.L.C.
*Attorneys for Plaintiff Thomas D. Raffaele*
175-61 Hillside Ave. Ste. 302
Jamaica, NY 11432
Tel.: (347) 809-7810
Fax: (914) 861-0099

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

THOMAS D. RAFFAELE,

No.

Plaintiff,

- against -

THE CITY OF NEW YORK; RAYMOND W. KELLY,
individually and in his official capacity as Police
Commissioner for the City of New York; RICHARD A.
BROWN, in his official capacity as the Queens District
Attorney; DANIEL O'LEARY, individually and in his official
capacity as an Assistant District Attorney for Queens County;
PETER A. CRUSCO, individually and in his official capacity
as an Assistant District Attorney of Queens County; LUIS
SAMOT, individually and in his official capacity as a New
York City Police Officer; RUSSELL LAWRY, individually
and in his official capacity as a New York City Police Officer;
JON-KRISTIAN RZONCA, individually and in his official
capacity as a New York City Police Officer; MOSES LEE,
individually and in his official capacity as a New York City
Police Officer; CARON ADDESSO, individually and in her
official capacity as a New York City Police Officer; DAVID
TAORMINA, individually and in his official capacity as a New
York City Police Officer; ANIBAL MARTINEZ, individually
and in his official capacity as a New York City Police Officer;
and NICHOLAS GIGANTE, individually and in his official
capacity as a New York City Police Officer,

Defendant(s).

----------------------------------------------------------------X

VERIFICATION

I, Thomas D. Raffaele, am the plaintiff in the above-captioned action. I have read the foregoing annexed Summons and Amended Verified Complaint. I know the contents thereof, and that the same is true to my knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

Dated: January 28 2014
Jamaica, New York



THOMAS D. RAFFAELE

Sworn to before me this day

28 January 2014

NOTARY PUBLIC

REZA M. ISLAM
Notary Public, State of New York
Registration No. 02IS6289160
Qualified in Suffolk County
Commission Expires Sept. 23, 2017