UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
THOMAS D. RAFFAELE,

                    *Plaintiff*,                          <u>**MEMORANDUM & ORDER**</u>

      - against –                                         13-CV-4607(KAM)(VVP)

THE CITY OF NEW YORK; RAYMOND W. KELLY,
individually and in his official capacity
as Police Commissioner for the City of
New York; RICHARD A. BROWN, in his
official capacity as the Queens District
Attorney; DANIEL O'LEARY, individually
and in his official capacity as an
Assistant District Attorney for Queens
County; PETER A. CRUSCO, individually and
in his official capacity as an Assistant
District Attorney of Queens County; LUIS
SAMOT, individually and in his official
capacity as a New York City Police
Officer; RUSSELL LAWRY, individually
and in his official capacity as a New
York City Police Officer; JON-KRISTIAN
RZONCA, individually and in his official
capacity as a New York City Police
Officer; MOSES LEE, individually and in
his official capacity as a New York City
Police Officer; CARON ADDESSO,
individually and in her official capacity
as a New York City Police Officer; DAVID
TAORMINA, individually and in his
official capacity as a New York City
Police Officer; ANIBAL MARTINEZ,
individually and in his official capacity
as a New York City Police Officer; and
NICHOLAS GIGANTE, individually and in his
official capacity as a New York City
Police Officer,

                    *Defendants*.
-----------------------------------------X
**MATSUMOTO**, United States District Judge:

Plaintiff Thomas D. Raffaele ("plaintiff" or "Judge Raffaele") brings this lawsuit pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and New York state law against the City of New York (the "City"); former New York City Police Commissioner Raymond W. Kelly; Queens District Attorney Richard A. Brown; Assistant District Attorneys Daniel O'Leary and Peter A. Crusco; and New York City Police Department ("NYPD") Officers and Sergeants Luis Samot, Russell Lawry, Jon-Kristian Rzonca, Moses Lee, Caron Addesso, David Taormina, Anibal Martinez, and Nicholas Gigante (collectively, "defendants") in connection with police activity at the intersection of 37th Road and 74th Street in Jackson Heights, New York in the early morning hours on June 1, 2012. Presently before the court is a motion by defendants Raymond Kelly ("Commissioner Kelly"), District Attorney Richard Brown ("DA Brown"), Assistant District Attorneys Daniel O'Leary ("ADA O'Leary") and Peter Crusco ("ADA Crusco"), and the City (together, the "moving defendants") to dismiss plaintiff's claims for (1) conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; (2) denial of access to the court; (3) supervisory liability; (4) municipal liability; (5) defamation; (6) prima facie tort and (7) all other claims against DA Brown, ADA O'Leary, and ADA Crusco (the "District Attorney defendants"). For the reasons set forth below, the moving defendants' motion is granted in its entirety.

## BACKGROUND

The following facts, even where alleged "upon information and belief," are taken from plaintiff's amended complaint and are assumed to be true solely for the purpose of the court's evaluation of the motion to dismiss. (Am. Compl., ECF No. 45, dated 1/28/14.) On or around 12:00 a.m. on June 1, 2012, Judge Raffaele, a justice of the Supreme Court of the State of New York, County of Queens, and his associate Muhammad Rashid ("Mr. Rashid") were traveling east on 37th Road toward 74th Street in Jackson Heights, New York to return car keys Mr. Rashid had previously borrowed. (*Id.* ¶¶ 6, 24-25.) As Judge Raffaele and Mr. Rashid arrived at the intersection of 37th Road and 74th Street, they noticed a crowd gathering and observed two officers of the NPYD who were later identified as Officer Luis Samot ("Officer Samot") and Officer Russell Lawry ("Officer Lawry"). (*Id.* ¶ 28.)

Judge Raffaele observed that Officer Samot was restraining Charles Menninger ("Mr. Menninger"), a homeless individual who is "commonly known in the neighborhood." (*Id.* ¶ 29.) Judge Raffaele also observed Officer Lawry standing on 74th Street, kicking a metal pipe toward Mr. Menninger. (*Id.* ¶ 30.) Judge Raffaele also observed Officer Samot kneeling with force on Mr. Menninger's left side while Mr. Menninger was lying face down, shirtless with his hands handcuffed behind his back.

(*Id.* ¶¶ 31-32.)  Judge Raffaele allegedly observed Officer Samot repeatedly stand up and drive his right knee into Mr. Menninger's back with "brutal force".  (*Id.* ¶¶ 32-33.)  Mr. Menninger was not attempting to stand up, resist, or flee and was allegedly saying "I beg you please stop; I beg you please stop."  (*Id.* ¶¶ 34-35.)

Judge Raffaele observed that a crowd was growing around the NYPD officers and that some members of the crowd were asking the police officers to stop their actions toward Mr. Menninger.  (*Id.* ¶¶ 38-39.)  Judge Raffaele overheard a female observer tell Officer Samot and Officer Lawry: "I'm a nurse. You are injuring him.  You have to stop."  (*Id.* ¶ 40.)  Judge Raffaele observed that the crowd was growing in size and was becoming increasingly aggressive toward Officers Samot and Lawry, and he walked away from the scene and called the 911 emergency line in an effort to ensure the safety of Officers Samot and Lawry.  (*Id.* ¶ 44.)  Judge Raffaele then allegedly walked back to the sidewalk corner of 74th Street and 37th Road and attempted to calm down the crowd and move them away from Mr. Menninger and Officers Samot and Lawry.  (*Id.* ¶ 46.)

Shortly thereafter, additional NYPD officers, including Sergeant Rzonca, Sergeant Taormina, Sergeant Addesso, Officer Martinez, and Officer Lee arrived at the scene.  (*Id.* ¶ 47.)  The additional NYPD officers set up a human safety

perimeter around Mr. Menninger and Officers Samot and Lawry in the middle of 74th Street and began managing the large crowd. (*Id.* ¶ 48.) Judge Raffaele allegedly did not enter the safety perimeter at any time and stood approximately ten to fifteen feet away from the safety perimeter. (*Id.* ¶¶ 49, 61.)

Judge Raffaele allegedly observed Officer Samot yell obscenities at the crowd and "violently shove and attack" members of the crowd. (*Id.* ¶¶ 56-57, 62-63.) Officer Samot allegedly "charged up" to Judge Raffaele, who was standing approximately fifteen feet away from the NYPD officers and shoved Judge Raffaele with his right arm without any warning or explanation. (*Id.* ¶¶ 64-65.) Officer Samot also struck Judge Raffaele in the neck using a "karate chop-like" move with his left hand immediately thereafter. (*Id.* ¶ 66.) Officer Samot's actions against Judge Raffaele were captured on video and at least four or five NYPD officers observed the incident, including Sergeant Rzonca. (*Id.* ¶¶ 67, 84.) Judge Raffaele was allegedly overcome with "blinding pain" and temporarily lost his ability to speak and breathe properly. (*Id.* ¶ 70.) Other NYPD officers immediately moved Officer Samot away from Judge Raffaele. (*Id.* ¶ 72.)

After Judge Raffaele regained the ability to speak, he informed Officer Lee that he wanted to file an official report or complaint against Officer Samot. (*Id.* ¶ 73.) Officer Lee

allegedly responded that he "can't do that", and Judge Raffaele immediately demanded to speak to the commanding officer. (*Id.* ¶ 74.) Shortly thereafter, Sergeant Rzonca approached Judge Raffaele and identified himself. (*Id.* ¶ 75.) Judge Raffaele then identified himself as a New York State Supreme Court Judge and informed Sergeant Rzonca of the attack by Officer Samot. (*Id.* ¶ 76.) While speaking with Sergeant Rzonca, Judge Raffaele displayed signs of extreme pain and discomfort in his neck area. (*Id.* ¶ 77.) Judge Raffaele demanded that Sergeant Rzonca take his statement for a formal complaint against Officer Samot. (*Id.* ¶ 78.) Sergeant Rzonca did not take Judge Raffaele's statement but promised to investigate and spoke with a group of NYPD officers that included Officer Samot and other officers who had witnessed the attack against Judge Raffaele. (*Id.* ¶ 79.) After speaking with the officers, Sergeant Rzonca returned to Judge Raffaele and stated: "I don't know what you are talking about." (*Id.* ¶ 80.) Plaintiff alleges that the group of NYPD officers with whom Sergeant Rzonca spoke reported that nothing had happened involving Judge Raffaele. (*Id.* ¶ 81.) Sergeant Rzonca did not offer Judge Raffaele any alternative recourse or take Judge Raffaele's statement. (*Id.* ¶ 82.) Judge Raffaele alleges that NYPD officers, including Officer Lee and Sergeant Rzonca, intentionally concealed Officer Samot's identity from Judge Raffaele in an attempt to protect Officer Samot from

discipline. (*Id.* ¶ 93.)

Thereafter, Judge Raffaele and Mr. Rashid left the scene. (*Id.* ¶ 87.) Judge Raffaele continued to experience neck pain and labored breathing (*Id.* ¶¶ 91, 95.) At about 1:00 a.m. on June 1, 2012, Judge Raffaele went to the Emergency Room at Elmhurst Hospital Center, where he was examined for internal injuries, including a crushed larynx. (*Id.* ¶ 99.)

Judge Raffaele advised the medical staff that his injuries resulted from an attack, and the hospital staff summoned two NYPD officers from the 110th Precinct to take Judge Raffaele's statement. (*Id.* ¶ 100-01.) The NYPD officers belonging to the 110th Precinct met with Judge Raffaele and began to take his statement against Officer Samot. (*Id.* ¶ 102.) A few minutes after they started speaking with Judge Raffaele, the 110th Precinct officers "were called away" out of the sight of Judge Raffaele. (*Id.* ¶ 103.) Mr. Rashid observed Officer Lee and Sergeant Rzonca speaking with the NYPD officers from the 110th Precinct on two separate occasions in the Emergency Room. (*Id.* ¶ 104.) Thereafter, the NYPD officers from the 110th Precinct returned to Judge Raffaele and informed him that the incident occurred beyond the 110th Precinct's geographic boundaries, refused to take Judge Raffaele's statement and advised him to file a complaint at his local precinct. (*Id.* ¶¶ 105-06.) Judge Raffaele was discharged from Elmhurst Hospital

Center at or around 5:30 a.m. on June 1, 2012. (*Id.* ¶ 109.)

During the week of July 8, 2012, Judge Raffaele met with ADA O'Leary and NYPD Internal Affairs Bureau ("NYPD Internal Affairs") detectives. (*Id.* ¶ 110.) Judge Raffaele filed complaints with the New York Civilian Complaint Review Board (the "CCRB"), the Queens District Attorney's Office and Internal Affairs. (*Id.* ¶ 111.) The complaints included the names and contact information for Mr. Rashid and S.M. Ismail ("Mr. Ismail"), two eyewitnesses to Judge Raffaele's attack. (*Id.* ¶¶ 112-14.)

Judge Raffaele met with ADA Crusco on July 25, 2012 at which point ADA Crusco informed Judge Raffaele that "there was not enough evidence to prosecute." (*Id.* ¶¶ 116-17.) ADA Crusco conceded that he did not interview Mr. Rashid and Mr. Ismail despite being provided with their contact information. (*Id.* ¶ 118.) ADA Crusco informed Judge Raffaele that multiple NYPD officers' statements contradicted Judge Raffaele's allegations against Officer Samot. (*Id.* ¶ 119.) Specifically, ADA Crusco informed Judge Raffaele that one statement described Judge Raffaele charging into the safety perimeter and acting aggressively and other written statements showed that Officer Samot only touched Judge Raffaele once on the chest with his right hand (or not at all) and failed to mention Officer Samot's strike to Judge Raffaele's throat. (*Id.* ¶¶ 125-27.) ADA Crusco

8

also allegedly informed Judge Raffaele that the statements described Judge Raffaele yelling and inciting the crowd. (*Id.* ¶¶ 128-29.) ADA Crusco did not identify Officer Samot as the assailant at the July 25, 2012 meeting. (*Id.* ¶ 134.)

The amended complaint alleges that Officer Samot, Officer Lee, Officer Martinez, Officer Gigante, Sergeant Rzonca, Sergeant Taormina and Sergeant Addesso gave false and misleading statements to NYPD Internal Affairs, devising a version of the incident to shield Officer Samot from disciplinary action and criminal prosecution. (*Id.* ¶¶ 120, 133.)

In early August 2012, NYPD officers who work with the Queens District Attorney's Office approached Mr. Rashid and Mr. Ismail for interviews regarding the June 1, 2012 incident. (*Id.* ¶ 142.) In his interview, Mr. Ismail recounted a narrative of the June 1, 2012 incident that mirrored that of Judge Raffaele. (*Id.* ¶ 148.) Mr. Ismail found the NYPD officers to be very aggressive and felt as if the NYPD officers were attempting to dissuade him from coming forward with his account and were discrediting his narrative. (*Id.* ¶¶ 145-47.) Mr. Rashid also recounted the same version of the incident as described by Judge Raffaele and Mr. Ismail in his interview, and felt that the NYPD officers and Queens District Attorney's Office discredited his account. (*Id.* ¶¶ 152-53.)

On August 22, 2012, DA Brown issued a public statement

on behalf of the Queens District Attorney's Office stating that "the alleged assault [on Judge Raffaele] occurred in a safety perimeter that police officers attempted to establish around the incident to contain Mr. Menninger and separate him from the growing crowd." (*Id.* ¶ 157.)

On August 26, 2012, Judge Raffaele met with ADA Crusco, investigators from the CCRB and NYPD Internal Affairs officers. (*Id.* ¶ 160.) ADA Crusco again informed Judge Raffaele that the Queens District Attorney's Office would not be bringing any charges against officer Samot related the June 1, 2012 incident, because Judge Raffaele had been acting aggressively and "nothing happened". (*Id.* ¶ 161.)

The amended complaint alleges that Judge Raffaele's reputation and his perceived ability to perform his duties as a judge have been adversely affected by DA Brown's public statement and ADA Crusco's statements. (*Id.* ¶ 163.) The amended complaint also alleges that Commissioner Kelly became aware of the June 1, 2012 incident in early June 2012 when questioned by members of the press. (*Id.* ¶ 166.) On July 7, 2012, a New York Times article published a quote by Commissioner Kelly stating that "the investigation is going forward." (*Id.* ¶ 167.)

## I.  Motion for Judgment on the Pleadings Pursuant to Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides, in relevant part, that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.  Materials Outside the Pleadings

On a motion to dismiss, "'consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.'" *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (quoting *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993))(internal alterations omitted).  The Second Circuit has clarified that because the reliance standard "has been misinterpreted on occasion," "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)(citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

Here, the court first addresses whether it may properly consider two documents while evaluating defendants' motion to dismiss: the August 22, 2012 press release from the Queens County District Attorney Brown (the "DA Brown's press release") (Defs.' Mem. of Law in Supp. of their Mot. to Dismiss

("Defs.' Mem."), Exh. B, ECF No. 57-1) and the New York Civilian Complaint Review Board ("CCRB") Investigative Report (the "CCRB Report") dated December 12, 2013 (Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Mem."), Exh. A, ECF No. 67-1).

In the amended complaint's allegations of "slander and libel per se" in count XIV, plaintiff alleges that "the City by and through public statements issued by DA Brown, ADA Crusco, ADA O'Leary and Commissioner Kelly damaged Judge Raffaele's reputation . . . ." (Am. Compl. ¶ 255.) Plaintiff also quotes DA's Brown press release in the amended complaint. (Am. Compl. ¶ 157.) Consequently, the court considers DA Brown's press release in deciding defendants' motion to dismiss, because plaintiff has "relied on" the press release in bringing his defamation claim by alleging that the press release contains defamatory statements.

The court, however, declines to consider the CCRB Report because the amended complaint did not attach the CCRB Report, the CCRB Report was not incorporated by reference into the amended complaint, and the amended complaint does not rely on the "terms and effect" of the report. The amended complaint alleges that Judge Raffaele filed a complaint with the CCRB and describes investigative steps taken (or allegedly not taken) by the CCRB, but the amended complaint does not make any reference to the CCRB Report findings. In any event, the court may not

take judicial notice of the CCRB Report, which is not a public document whose "accuracy cannot reasonably be questioned."[1]  Fed. R. Evid. 201(b)(2).  Even if the court were to take judicial notice of the CCRB Report, it can only do so "in order to determine what statements [the document] contained . . . 'not for the truth of the matters asserted.'"  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)(quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).  In his opposition, plaintiff offers certain CCRB Report findings to substantiate his allegations, thus improperly attempting to introduce the CCRB Report findings for the truth of the matters asserted therein.  Similarly, the court will not consider plaintiff's assertion, made for the first time in plaintiff's opposition memorandum, that, based on the CCRB Report, the City had notice that Officer Samot "may have used excessive force in violation of citizens' protected constitutional rights and would likely do so again."  (Pl.'s Mem. at 17.)  For the foregoing reasons, the court declines to rely on the CCRB Report in deciding the instant motion.

---

[1] The parties marked the CCRB Report as confidential pursuant to the Protective Order stipulated to by the parties and "so ordered" by the Magistrate Judge supervising discovery.  The parties sought to file the CCRB Report under seal.  (*See* ECF Nos. 54, 60, 61.)  In plaintiff's letter dated June 2, 2014, he asserted that the CCRB Report "is not a Public Record." (ECF No. 60.)  Although the court denied the parties' motion to file the CCRB Report under seal (ECF No. 62), that the redacted version of the CCRB Report is now accessible by the public has no bearing on whether the accuracy of the CCRB Report can or cannot be reasonably questioned and whether the court may consider it in deciding the moving defendants' motion.

<u>**DISCUSSION**</u>

The court addresses moving defendants' motion to dismiss plaintiff's claims for denial of access to the court; conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; supervisory liability; municipal liability; and defamation in turn.[2]

## I.   Denial of Access to the Courts in Violation of § 1983 (Count IV)

"The Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment." *Bourdon v.*

---

[2] Plaintiff failed to address the moving defendants' arguments seeking to dismiss plaintiff's *prima facie* tort claim and the claims against the District Attorney defendants. Consequently, the court deems plaintiff's *prima facie* tort claim and the claims against the District Attorney defendants to be abandoned and they are hereby dismissed. *See Moccio v. Cornell Univ.,* No. 09-CV-3601, 2009 WL 2176626, at *4 (S.D.N.Y. July 21, 2009) ("Whatever the merit of [the defendants'] argument [for dismissal], plaintiff has abandoned the ... claim, as her motion papers fail to contest or otherwise respond to [the] defendants' contention."), *aff'd,* 526 F. App'x 124 (2d Cir. 2013); *DeVere Grp. GmbH v. Opinion Corp.,* 877 F. Supp. 2d 67, 70 n.3 (E.D.N.Y. 2012) (deeming two causes of action abandoned because the "defendants move to dismiss [the plaintiff's] complaint in its entirety" and the plaintiff did not address those causes of action in opposing the defendants' motion to dismiss, despite the fact that the defendants had not discussed the elements of these two claims); *cf. Jackson v. Federal Exp.,* 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned."). The court has nonetheless considered the moving defendants' arguments and authorities regarding he claims of *prima facie* tort and the claims against the DA defendants and grants defendants' motion to dismiss the claims for the reasons stated in defendants' submissions.

*Loughren,* 386 F.3d 88, 92 (2d Cir. 2004) (citing *Christopher v. Harbury,* 536 U.S. 403, 415 n.12 (2002)). The Supreme Court in *Christopher v. Harbury* divided denial-of-access cases into two categories: the first category is where a "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time"; and the "second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." 536 U.S. at 413-14. Cases in the second category that involve so-called backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id*. at 414. Thus, when the access claim looks backward, "the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id*. at 415.

The Second Circuit, in *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012), has held that backward-looking right of access claims, "if recognized, would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely or if official misconduct was so severe as to render hollow his right to seek redress." *Id*. (internal quotations and

citations omitted).  Claims based on withholding or fabrication of facts "are available only if a judicial remedy was completely foreclosed by the false statement or nondisclosure."  *Id*. (internal quotations and citations omitted).  The Second Circuit further notes that "when a plaintiff in a backward-looking access suit alleges that the government concealed or manipulated relevant facts, the claim may not proceed if the plaintiff was, at the time of the earlier lawsuit, aware of the facts giving rise to his claim . . . because a plaintiff who has knowledge of the facts giving rise to his claim and an opportunity to rebut opposing evidence *does* have adequate access to a judicial remedy."  *Id*.  (emphasis in original).  "The point of the backward-looking right of access [claims] recognized by other circuits is to ensure that plaintiffs have that opportunity—not to convert every instance of deception by a government witness into a separate federal lawsuit."  *Id*. at 128-29.

Here, the amended complaint fails to state a claim for denial of access to the courts.  The amended complaint does not identify a judicial remedy that may have been awarded to plaintiff but was not otherwise available because of the NYPD's alleged cover-up of Officer Samot's conduct.  Here, Judge Raffaele has been aware of the relevant facts needed to seek redress throughout the investigations by the Queens County District Attorney's office, the CCRB, and NYPD Internal Affairs,

17

because he was present at the June 1, 2012 incident and took steps to rebut opposing evidence by maintaining his version of the incident, seeking out more information about the incident, meeting with investigators and prosecutors, and providing the contact information of other eyewitnesses to corroborate his version of events. To the extent Judge Raffaele asserts that he was prejudiced by the NYPD's initial failure to disclose Officer Samot's name, this argument does not give rise to a claim of denial of access to the courts, because he has failed to identify any judicial remedy that has been foreclosed due to this delay. Judge Raffaele has been able to timely file his claims against Officer Samot and other defendants stemming from the June 1, 2012 incident in federal court. Consequently, plaintiff's claim of denial of access to the courts is dismissed.[3]

## II. Conspiracy in Violation of § 1983 (Count V)

In the context of a § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3)

---

[3] To the extent that plaintiff alleges a claim based on the Queens County DA's failure to prosecute, it is also dismissed, because plaintiff, as a private citizen, lacks standing to bring a claim for failure to prosecute another. *Esposito v. New York*, 355 F. App'x 511, 512 (2d Cir. 2009)("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.")(quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

an overt act done in furtherance of that goal causing damages."
*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).
Although "conclusory allegations" of a § 1983 conspiracy are
insufficient, *Jean-Laurent v. Wilkerson,* 461 F. App'x 18, 22
(2nd Cir. 2012)(quoting *Davis v. New York*, 316 F.3d 93, 100
(2002)), the Second Circuit has "recognized that such
'conspiracies are by their very nature secretive operations,'
and may have to be proven by circumstantial, rather than direct,
evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.
1999)(quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.
1994)). "[A] claim of conspiracy to violate a constitutional
right cannot be maintained where no constitutional right was
violated." *Manbeck v. Micka*, 640 F. Supp. 2d 351, 378 (S.D.N.Y.
2009)(citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119
(2d Cir. 1995)("[A]lthough the pleading of a conspiracy will
enable a plaintiff to bring suit against purely private
individuals, the lawsuit will stand only insofar as the
plaintiff can prove the *sine qua non* of a § 1983 action: the
violation of a federal right."))

The amended complaint alleges that defendants
"orchestrated a cover-up to insulate Officer Samot" which
included, *inter alia*, fabricating allegations that Judge
Raffaele acted aggressively and stepped within the security
perimeter, discouraging witnesses to speak truthfully through

the use of intimidation, and giving false statements. (Am. Compl. ¶ 173.) These factual allegations all relate to plaintiff's claim that defendants conspired to violate plaintiff's constitutional right of access to the courts (as opposed to other alleged constitutional violations of excessive force or failure to intercede). As the court has previously discussed in Part II, plaintiff fails to allege any violation of his constitutional right to access the courts. Consequently, plaintiff's conspiracy claim based on denial of access to the courts in violation of § 1983 is dismissed for failing to allege any underlying violation of his constitutional right to access the courts. The court notes that the amended complaint does not allege any conspiracy to commit the other alleged constitutional violations of excessive force and failure to intercede.

### III. Conspiracy in Violation of §§ 1985 and 1986 (Counts VI, VII, VIII)

Section 1985(2) permits a private party to bring suit

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . ; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure

> him or his property for lawfully enforcing, or
> attempting to enforce, the right of any person, or
> class of persons, to the equal protection of the laws.

The first clause of Section 1985(2) prohibits conspiracies to obstruct justice in federal courts, while the second clause "applies to conspiracies to obstruct the course of justice in state courts" with the intent to deny to any citizen the equal protection of the laws. *Kush v. Rutledge*, 460 U.S. 719, 725 (1983); 42 U.S.C. § 1985(2). Unlike the first clause, which "outlaws *all* interference with any person's attempt to attend federal court," *Keating v. Carey,* 706 F.2d 377, 385 (2d Cir. 1983)(emphasis in original), the second clause explicitly requires that conspirators' actions "be motivated by an intent to deprive their victims of equal protection of the laws." "This requirement has been interpreted to mean that plaintiff must allege discriminatory 'racial, ethnic, or class-based animus' motivating the conspirators' action." *Simon v. City of New York*, No. 12-CV-1596, 2012 WL 4863368, at *4 (E.D.N.Y. Oct. 11, 2012) (quoting *Zemsky v. City of New York*, 821 F.2d 148, 151 n.4 (2d Cir. 1987)).

Here, the amended complaint alleges that defendants "refrained and dissuaded witnesses from giving true and/or accurate statements regarding the incident that occurred on June 1, 2012 if approached by State and/or Federal Investigators." (Am. Compl. ¶ 200.) Although the amended complaint does not

allege that there was any ongoing federal investigation of the
June 1, 2012 incident, it does allege that Judge Raffaele
reached out to the Queens County District Attorney's Office,
NYPD Internal Affairs, and the CCRB in the days following the
June 1, 2012 incident, and that subsequent investigations by
those offices were commenced. (*See* Am. Compl. ¶¶ 110-11.)
Plaintiff fails to allege any facts that a federal investigation
was ongoing, but instead alleges in conclusory and hypothetical
language that defendants attempted to interfere with a federal
investigation. This allegation is insufficient to state a claim
to relief that is plausible on its face. Thus, any claim based
on an alleged conspiracy to interfere with a federal court
proceeding is dismissed. *See, e.g.*, *White v. St. Joseph's
Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010)("Insofar as
[plaintiff] sought to bring an action pursuant to 42 U.S.C. §
1985, she provided merely conclusory, vague, or general
allegations of conspiracy to deprive her of constitutional
rights which are insufficient to support a claim under § 1985.")

 The amended complaint also fails to state a claim of
conspiracy pursuant to the second clause of § 1985, because it
fails to allege any "racial, ethnic, or class-based animus"
motivating defendants' actions. Thus, plaintiff's claims based
on the second clause of § 1985 to obstruct "the due course of
justice . . . with intent to deny to any citizen the equal

protection of the laws" is also dismissed. *See Zemsky,* 821 F.2d at 151 & n. 4 (2d Cir. 1987) (section 1985(2) conspiracy to interfere with state court proceedings requires a deprivation of plaintiff's rights "on account of his membership in a particular class of individuals"); *Simon*, 2012 WL 4863368, at *5 (dismissing claim based on the second clause of § 1985(2) because plaintiff "failed to allege that any defendant harbored an intent to discriminate"). Consequently, plaintiff's conspiracy claims pursuant to §§ 1985 and 1986[4] are dismissed.

## IV. Supervisory Liability (Count IX)

It is the well settled that a claim brought under § 1983 must allege the personal involvement of each defendant. *See Ashcroft v.* Iqbal, 556 U.S. 662, 676 (2009); *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013) (collecting Second Circuit cases). A plaintiff can plead a defendant's personal involvement by showing any of the following five courses of conduct:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly

---

[4] Any claim under § 1986 must fail when plaintiff's § 1985 claim fails. *White*, 369 F. App'x at 226 ("Insofar as [plaintiff] sought to state a claim under 42 U.S.C. § 1986, this claim necessarily failed because she failed to state a claim under § 1985.")

> negligent in supervising subordinates who
> committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference
> by failing to act on information indicating
> that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[5] "Conclusory

accusations regarding a defendant's personal involvement in the

alleged violation, standing alone, are not sufficient . . . and

supervisors cannot be held liable based solely on the alleged

misconduct of their subordinates." *Kee v. Hasty*, No. 01 Civ.

2123, 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal

citations omitted). "[A]llegations as to defendants' knowledge

of alleged constitutional violations [are] insufficient to

impose supervisory liability" under § 1983 unless accompanied by

allegations that the defendants had direct responsibility for

monitoring the alleged violation or that there had been a

"history of previous episodes" putting the defendants on notice

of the problem. *Candelaria v. Coughlin*, No. 91 Civ. 1117, 1991

WL 113711, at *2 (S.D.N.Y. June 11, 1991) (citations omitted).

Defendants move to dismiss supervisory liability

claims against Commissioner Kelly.[6,7] The amended complaint

---

[5] The Second Circuit has yet to determine the contours of the supervisory
liability test after *Iqbal*. *See Jamison v. Fischer*, --- F. App'x ---, 2015
WL 3953399, at *1 n.1 (2d Cir. June 30, 2015)(quoting *Grullon*, 720 F.3d 139,
which noted that *Iqbal* "may have heightened the requirements for showing a
supervisor's personal involvement with respect to certain constitutional
violations"). In any event, plaintiff's supervisory allegations against
Commissioner Kelly fail under both *Colon* and *Iqbal*.
[6] The moving defendants also move to dismiss supervisory liability claims
against the District Attorney defendants, but the court need not address
these arguments, because the court has already dismissed the claims against

fails to allege a supervisory liability claim against
Commissioner Kelly.  The amended complaint does not allege that
Commissioner Kelly had direct responsibility for monitoring the
incident on June 1, 2012 and the allegations that "NYPD
Commanding Personnel received complaints about the conduct of
Officer Samot and other officers" are conclusory and lack the
requisite factual content to establish facial plausibility.
(Am. Compl. ¶ 214.)  Consequently, plaintiff's supervisory
liability claims against Commissioner Kelly are dismissed.

## V.    Municipal Liability (Count X)

To state a claim for relief against a municipal
defendant pursuant to 42 U.S.C. § 1983, a plaintiff must allege
the existence of an officially adopted policy or custom that
caused injury and a direct causal connection between that policy
or custom and the deprivation of a constitutional right.  *Bd. of
Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-
04 (1997) (citing *Monell v. New York City Dep't of Social
Servs.,* 436 U.S. 658 (1978)).  "Proof of a single incident of

the District Attorney defendants because plaintiff has abandoned his claims
against the District Attorney defendants by failing to oppose moving
defendants' absolute immunity arguments and for the reasons stated in the
moving defendants' submissions.

[7] The moving defendants' do not appear be moving dismiss the supervisory
liability claims against Sergeant Rzonca, Sergeant Taormina, and Sergeant
Addesso.  In the section of the moving defendants' Memorandum of Law that
addresses supervisory liability, the moving defendants only address the
supervisory liability claims against DA Brown and Commissioner Kelly.  (*See*
Defs.' Mem at 12-13.)  In the preliminary statement, the moving defendants do
not indicate they are moving on behalf of Sergeant Rzonca, Sergeant Taormina,
and Sergeant Addesso.  (*See id*. at 1.)  Accordingly, the court construes the
motion to dismiss the claims for supervisory liability only as to
Commissioner Kelly and the District Attorney defendants.

unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Hartnagel v. City of New York*, No. 10–cv–5637, 2012 WL 1514769, at *4 (E.D.N.Y. Apr. 30, 2012) (single incident involving actor below policy-making level cannot give rise to *Monell* liability).

The amended complaint alleges that the City maintains a policy and custom of "inadequately investigat[ing] civilian complaints describing NYPD misconduct and . . . inadequately punish[ing] NYPD Police Officers when the civilian complaints are substantiated." (Am. Compl. ¶ 221.) Specifically, the amended complaint alleges that, *inter alia*, no witness statements were taken at the time of the incident, acts of brutality were resolved "with a slap on the wrist," the NYPD took "unreasonable amounts of time to interview" suspected officers, that the District Attorney's office did not interview any civilian witnesses prior to informing Judge Raffaele that no charges would be brought against Officer Samot, and that the first civilian witness was not interviewed until approximately six weeks after the incident. (*See* Am. Compl. ¶¶ 221-240.) Plaintiff's municipal liability claim relates entirely to the

NYPD's investigation of the June 1, 2012 incident, not any officially adopted City policy that caused the alleged assault itself. Thus, to the extent that plaintiff alleges that the constitutional violation for which the City is liable is plaintiff's denial of access to the courts, for the reasons previously discussed, plaintiff's underlying claim of denial of access to the courts fails as a matter of law, and therefore, plaintiff's claim for municipal liability also fails.[8] *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.") Furthermore, to the extent the amended complaint could be construed to allege a claim of municipal liability for the excessive force violation, plaintiff has failed to adequately allege that this single incident of excessive force by Officer Samot "includes proof that it was caused by an existing, unconstitutional municipal policy." *Tuttle*, 471 U.S. at 824.

---

[8] Plaintiff alleges that the City failed to train NYPD police officers "who witnessed and/or have information regarding misconduct by fellow officers" and failed to discipline NYPD police officers "who are aware of and subsequently conceal and/or aid and abet violations of citizens' constitutional rights by other NYPD Police Officers." (Am. Compl. ¶¶ 235-36.) The failure to train and failure to discipline theories of municipal liability are also unavailing, because they allege practices that caused no constitutional injury. Additionally, these allegations are conclusory and boilerplate and fail to point to any "specific deficiency" in the City's training program establishing that the deficiency "actually caused" any constitutional deprivation. *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129-30 (2d Cir. 2004).

## VI. False and/or Fraudulent Statements (Count XIII) and Slander and Libel (Count XV)[9]

In Count XIII, plaintiff alleges that defendants' false statements regarding the incident on June 1, 2012 "denied [him] his constitutional rights and insulated Officer Samot from facing any discipline." (Am. Compl. ¶¶ 249-50.) The allegations in Count XIII closely overlap with the allegations in Counts IV to X which have been dismissed. Consequently, for the same previously stated reasons, Count XIII alleging false and/or fraudulent statements is also dismissed.

In Count XV, plaintiff alleges that defendants made false oral and written statements that "questioned [his] integrity" and "prevented an honest investigation." (Am. Compl. ¶¶ 255-59.) Under New York law, in order to state a claim for defamation, a plaintiff must allege: (1) a false and defamatory statement of fact, (2) concerning the plaintiff, (3) published without privilege or authorization to a third party by the defendant, (4) constituting fault as judged by, at a minimum, a negligence standard, and (5) causing special harm or constituting defamation *per se*. *See, e.g., Salvatore v. Kumar*, 845 N.Y.S.2d 384, 388 (N.Y. App. Div. 2007); *Tannerite Sports, LLC v. NBCUniversal Media LLC*, No. 15-cv-2343, 2015 WL 5783811, at *6 (S.D.N.Y. Oct. 1, 2015).

---

[9] The amended complaint mis-numbers Count XV as Count XIV due to an error numbering two claims as Count XIII. The court has corrected the error and refers to the allegations for slander and libel as Count XV.

The pleading standard for a defamation action brought in federal court is governed by Rule 8 of the Federal Rules of Civil Procedure, which provides that "[e]ach allegation [of a pleading] must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). While the federal rules do not require the particularized pleading requirements set forth in New York's C.P.L.R. section 3016, *see Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980), Rule 8 still requires that each pleading be specific enough to "afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986).

The amended complaint alleges in Count XV that "public statements issued by DA Brown, ADA Brusco, ADA O'Leary and Commissioner Kelly damaged Judge Raffaele's reputation by falsely claiming orally and/or in writing that Judge Raffaele acted aggressively and illegally toward the NYPD Police Officers by forcefully entering into a safety perimeter setup by NYPD Police Officers at the site of the June 1, 2012 incident." (Am. Compl. ¶ 255.) Plaintiff also alleges that all defendants damaged his reputation by making written and oral statements that questioned his integrity, honesty and/or reliability and "prevented an honest investigation to reveal the truth" regarding the Jun 1, 2012 incident. (*Id.* ¶ 256.) Allegedly,

the offending written and oral statements "adversely effected [sic] and/or raise the inference" that plaintiff lacks the integrity to carry out his duties as a New York Supreme Court Justice and that he has lost "present and future income." (*Id.* ¶¶ 258-59.) Other than DA Brown's press release dated August 22, 2012, the amended complaint does not identify any other allegedly false words that were actually spoken or published.[10] Specifically, the allegedly defamatory statement of fact arises from the following sentence of the DA's press release: "The alleged assault occurred in a safety perimeter that police officers attempted to establish around the incident to contain Mr. Menninger and separate him from the growing crowd." (Defs.' Mem., Exh. B, ECF No. 57-2.)

"Whether particular words are reasonably capable of being read as defamatory is a threshold question of law to be determined by the court." *Mondello v. Newsday, Inc.*, 6 A.D.3d 586, 587, 774 N.Y.S.2d 794 (N.Y. App. Div. 2004)(citing *James v. Gannett Co.*, 353 N.E.2d 834 (N.Y. 1976)). "A defamatory statement of fact is one that 'tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an

---

[10] To the extent plaintiff's allegations encompass other allegedly defamatory statements, they are dismissed pursuant to Federal Rule of Civil Procedure Rule 8, because the amended complaint fails to identify the statements, the defendant making the statements, or even the general time frame during which, or location at which, they were spoken or published. *See Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990)(affirming district court's dismissal of defamation claim where plaintiff failed to plead adequately the actual words spoken, publication or special damages).

evil opinion of him in the minds of right-thinking people to deprive him of their friendly intercourse in society.'" *Ferlito v. Cnty. of Suffolk*, No. 06-cv-5708, 2007 WL 4180670, at *4 (E.D.N.Y. Nov. 19, 2007)(quoting *Rinaldi v. Holt, Rinehardt & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977)). When determining whether a statement is defamatory, "[c]ontext is key," and "[t]he dispositive inquiry is whether a reasonable reader could have concluded that the article[ ] w[as] conveying [defamatory] facts." *Finkel v. Dauber*, 906 N.Y.S.2d 697, 701, 702 (N.Y. Sup. Ct. 2010) (internal emphasis, brackets, and quotation marks omitted); *see also Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993) (noting that the facts a reasonable reader would have concluded were being conveyed must be defamatory).

Here, the court finds that a reasonable reader could not have concluded that the DA's press release was conveying any defamatory facts. The Brown press release clearly articulates that the district attorney's office found "insufficient evidence of criminality" to support criminal charges, citing the reasonable doubt standard, and briefly provides the factual bases for its determination. (Defs.' Mem., Exh. B.) In this context, the statement in the Brown press release that Judge Raffaele's alleged assault occurred "in a safety perimeter" does not, in any way, suggest that Judge Raffaele was acting "aggressively and illegally" toward NYPD officers nor that he

"forcefully" entered the safety perimeter as the amended complaint alleges. (*See* Am. Compl. ¶ 255.) Nor does the press release raise an inference that Judge Raffaele lacks the "integrity, honesty and/or reliability to carry out his duties as a Supreme Court Justice for the State of New York." (*Id.* at ¶ 258.) In fact, the statement that Judge Raffaele's alleged assault "occurred in a safety perimeter" does not even describe how Judge Raffaele came to be within the safety perimeter, whether it was by his own action or whether it was because police officers encircled him. In any event, a reasonable reader could not have concluded that these statements were conveying "public contempt, ridicule, aversion, or disgrace or induc[ing] an evil opinion of [Judge Raffaele] in the minds of right-thinking people." Consequently, plaintiff's claims for slander and libel fail as a matter of law, and they are dismissed.

## CONCLUSION

For the foregoing reasons, the court grants the moving defendants' motion to dismiss in its entirety and plaintiff's following claims are hereby dismissed: (1) conspiracy claims pursuant to §§ 1983, 1985, and 1986 (Counts I, V, VI, VII and VIII); (2) denial of access claim pursuant to § 1983 (Count IV); (3) supervisory liability claim against Commissioner Kelley (Count IX); (4) municipal liability claim (Count X); (5) *prima*

32

*facie* tort claim (Count XII); (6) slander and libel claims (Counts XIII and XV); and (7) all claims against the District Attorney defendants.

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (citation and internal quotation marks omitted). Leave to amend, however, should be denied in situations where the amendment would be futile, *see Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995), or otherwise unproductive. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)(per curiam). Plaintiff has not requested leave to amend his complaint a second time nor detailed any proposed amendments. Additionally, discovery is well underway in this case. Consequently, in the absence of any request or proposals by plaintiff, the court denies leave to amend at this time. If plaintiff intends to amend his complaint, he must make his request including his proposed amendments within 14 days of entry of this Memorandum and Order.

**SO ORDERED.**

Dated:    October 30, 2015
          Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge